*La sentencia apelada debe ser confirmada.*

Las Monjas Racing Corporation, por su Presidente Germánico S. Belaval, demandante y apelada, *v.* Comisión Hípica Insular, et als., demandados y apelantes.

Núm. 7726.—*Sometido:* Junio 18, 1940. *Resuelto:* Octubre 24, 1940.

*Diego O. Marrero,* abogado de los apelantes; *Leopoldo Felíu,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

Las Monjas Racing Corporation inició esta demanda para prohibir a los demandados que pusieran en vigor cierto acuerdo, que prohibieran a la demandante la venta de ciertos boletos o interviniera en la venta de los mismos. Los demandados apelan de una sentencia adversa.

El primer señalamiento es que la corte de distrito erró al no declarar con lugar una moción para que se desestimara la demanda, toda vez que los demandados habían aprobado otro acuerdo derogando el primero.

Conforme indica la demandante al oponerse a esta moción, los demandados no admitieron su carencia de autoridad o facultad para tomar el acuerdo original. En su consecuencia, la derogación de ese acuerdo no garantizó que los demandados no alegarían nuevamente en cualquier época futura su supuesto derecho a prohibir la venta de los boletos o a intervenir en la disposición de los mismos.

Los apelantes se fundan en: 32 C. J. 75, 76, sección 61; *Hallenborg* v. *Cobre Grande Copper Co.,* 74 P. 1052; 32 C. J. 576, sección 63; *Continental Securities Co.* v. *Interborough R. T. Co.,* 207 F. 467; *Alsager* v. *Peterson,* 141 N. W. 391, Ann. Cases 1915D 1253; *People* v. *Grand Rapids & W. Plankroad Co.,* 34 N. W. 250; *Kerr et al.* v. *Riddle et al.,*

31 S. W. 328; *Reyes v. Las Monjas Racing Corporation*, 40 D.P.R. 910, y *Lewis Publishing Co. v. Wyman*, 228 U. S. 610.

Los hechos en algunos de estos casos los hacen caer dentro de la regla general enunciada en 28 Am. Jur. 201, sección 8, a saber:

"Con frecuencia sucede que, mientras está pendiente un recurso de *injunction*, ocurren ciertos cambios en las condiciones que dan lugar al litigio, presentándose entonces la cuestión de si el pleito debe continuar o fracasar a base de los hechos existentes al momento de iniciarse el mismo, en forma tal que excluya toda consideración de cambios posteriores o el abandono de los actos imputados. Hablando en términos generales, es el estado de cosas existente al momento del pleito, más bien que el existente al tiempo de iniciársele, lo que es pertinente y lo que sirve de base al remedio solicitado. La corte no sólo está autorizada, sino que ello también es su deber, para determinar no meramente si el demandante tiene derecho a un *injunction* al momento de iniciarse el litigio, sino igualmente para determinar si los hechos existentes al momento de la vista justifican tal remedio, y ella puede negarse a expedir un *injunction* cuando después de iniciado el litigio las condiciones han cambiado en tal forma que el *injunction*, de ser concedido, resulte fútil e ineficaz."

Sin embargo, conforme se indica en el mismo texto:

"Esto no significa que la corte debe denegar el *injunction* solicitado en todo caso en que ha habido un cambio fundamental en las condiciones o un abandono de los actos imputados en la solicitud, puesto que todavía pueden existir circunstancias que, aun existiendo tal situación, justifiquen la expedición del *injunction* como cuestión de sana discreción judicial."

Véanse también: *Roberts v. City of Louisville*, 17 S. W. 216; *Sawyer v. Botti*, 27 L.R.A. (N.S.) 1007; *United States v. Workingmen's Amalgamated Council of New Orleans et al.*, 54 F. 994; *Majenica Telephone Co. v. Rogers*, 43 Ind. App. 306; *Goshen Mfg. Co. v. Hubert A. Myers Mfg. Co. et al.*, 242 U. S. 202.

El presente caso, a nuestro juicio, cae dentro de la excepción a la regla general, y no hallamos abuso de discreción.

■■ El segundo señalamiento es que la corte de distrito cometió error al resolver que bajo las disposiciones del

artículo 261 del Reglamento de la Comisión Hípica Insular ésta no podía adoptar el acuerdo de que se quejó la demandante, por el mero hecho de que la evidencia no demostrara cuál había sido la costumbre respecto al referido acuerdo.

Las únicas autoridades citadas en apoyo de esta contención son: Artículo 5 de la "Ley Hípica de Puerto Rico" (Núm. 11 de 1932, pág. 195), según fué enmendada por la Ley núm. 17, aprobada el 15 de julio de 1935 (Sesión Extraordinaria de ese año, pág. 93); *Huffman* v. *State Roads Commission*, 137 A. 358, 365, citado en 59 C. J. 112, sección 118, nota 62 (*b*); *State Racing Commission* v. *Latonia Agricultural Asso.*, 25 L.R.A. (N.S.) 905, 913, y *Douglas Park Jockey Club* v. *Talbott*, 191 S. W. 474.

Al decidir el caso, el juez de distrito dijo que los demandados habían admitido que nada había en la ley ni en los reglamentos para resolver el caso, pero se amparó en lo preceptuado en el artículo 261 del Reglamento, que dispone que cualquier caso no previsto deberá determinarse por la costumbre o uso en los hipódromos en general. Continuó diciendo que la jurisprudencia citada por los demandados no era aplicable. Como la costumbre o uso, siguió diciendo el juez, no ha sido objeto de evidencia en este caso, hay que resolverlo adversamente a las pretensiones de los demandados. Así pues, parecería que el error, de haberse cometido, fué incitado por los propios demandados. Sea ello como fuere, su alegato deja de convencernos de que la corte de distrito cometiera el error imputádole en el segundo señalamiento.

■ El tercer señalamiento es que la corte inferior cometió error al declarar con lugar la demanda de *injunction*, cuando en la misma no se alegan hechos suficientes para determinar una causa de acción.

Se arguye que el artículo 21 de la Ley 21 de 1925 (leyes de ese año, pág. 147) expresamente autoriza la suspensión de cualquier orden o resolución de la Comisión Hípica Insular que viole derechos constitucionales o estatutarios, mas este

precepto fué eliminado de las leyes de 1927 y 1932. La conclusión es que la demandante debe alegar y probar daños irreparables.

La peticionaria alegó:

Que de subsistir el mencionado acuerdo y tener que cumplir el mismo la demandante, la venta de dichos boletos quedaría suspendida indefinidamente; se desmoralizaría el negocio de la demandante, en cuanto a la venta de tales boletos se refiere; se le privaría de una suma considerable de dinero, que tendría derecho a percibir de dicho fondo, por ministerio de la ley, que no era posible determinar ni fijar, ni aun aproximadamente, en esa fecha, ni en fecha alguna, hasta tanto no se hubiera sorteado y adjudicado dicho *subscription fund;* se exponía a la demandante al descrédito de su dicho negocio, careciendo ella en este caso de todo remedio en el curso ordinario de la ley.

La médula del testimonio incontrovertido de la peticionaria es la siguiente:

Ya se habían distribuído para la venta todos los boletos del *subscription fund.* Gran parte de los mismos había sido vendida. También se había ya registrado en la corporación un número de cerca de $2,000 de esos boletos cuando vino la orden de suspensión de la Comisión. Muchos de los boletos que estaban en manos de los vendedores ya se habían vendido pero su importe no había sido ingresado en la corporación porque no los habían traído a registrar todavía. Los que se presentaron no pudieron ser registrados porque la Comisión había tomado nota de los números registrados y había prohibido que se registraran otros o que se efectuaran nuevas ventas y recibos. Como consecuencia del acuerdo, la corporación solamente registró alrededor de 2,000 boletos. En *subscription funds* anteriores se registraban más de 45,000 boletos. La diferencia representada por boletos no registrados nunca pudo volver a ingresar en la corporación porque ya esos boletos no servían. Estaban perdidos. De haberse permitido la venta, la corporación (que tenía un tanto por ciento en el importe del *subscription fund*) hubiera participado en un total de 25,000 o más boletos. El dinero de las personas que habían comprado boletos, estuvieran registrados o no, estaba atado. El público esperaba que este dinero le fuera devuelto. La demandante había recibido infinidad de cartas solicitando su devolución. La peticionaria no podía devolverlo porque el dinero estaba en el

banco y no podía sacarse de allí a no ser con las firmas del presidente de la Comisión Hípica y del presidente de la corporación. El resultado fué que, al celebrarse otro *subscription fund,* si antes vendían 45,000 o 50,000 boletos, entonces solamente venderían la mitad, porque al público no le gusta y no está dispuesto a jugar a un juego que se presta a esas cosas.

Hacía unos quince días que los boletos estaban a la venta. Las personas que los vendían recibían el dinero. Luego acudían a registrar los boletos y una vez registrados pagaban por ellos; pero el adquirente le pagaba al vendedor mucho antes de registrarse los boletos. Los vendedores habían vendido miles de esos boletos, mas no se sabía donde estaba ese dinero. La peticionaria continuamente recibía cartas reclámandole el dinero de los boletos que no habían sido registrados. Todo ese dinero estaría en la corporación y los boletos debidamente registrados, pero la demandante tuvo que negarse a registrarlos cuando los vendedores así lo solicitaron. La demandante les manifestó que la Comisión había suspendido la venta de boletos, había hecho una lista de los ya registrados y prohibido que se registraran otros.

No podemos convenir con los apelantes en que la corte de distrito cometiera el error imputádole en el tercer señalamiento.

No hallamos abuso de discreción en la concesión de costas, incluyendo honorarios de abogado.

*La sentencia apelada debe ser confirmada.*