Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| ELBA MIGDALIA ALICEA ORTIZ  Apelante  v.  BANCO POPULAR DE PUERTO RICO Y OTROS  Apelado | KLAN202400860  Consolidado con:  KLCE202401028 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón  Caso Núm.: BY2024CV02414  Sobre: INTERDICTO PRELIMINAR Y PERMANENTE, NULIDAD DE SENTENCIA, SENTENCIA DECLARATORIA, DAÑOS Y PERJUICIOS |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de noviembre de 2024.

Comparece ante *nos*, Elba Migdalia Alicea Ortiz (Alicea Ortiz o apelante) y nos solicita que revisemos y revoquemos una *Sentencia Parcial* emitida el 11 de julio de 2024 y notificada el 12 de julio de 2024, por el Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de Bayamón. Mediante dicho dictamen, el TPI declaró *Ha Lugar* la *Moción para Desestimar la Solicitud de Injunction Preliminar* que presentó el Banco Popular de Puerto Rico (BPPR o apelada).

Asimismo, la parte apelante nos solicita que revisemos y revoquemos la *Resolución* emitida el 17 de julio de 2024 y notificada el 18 de julio de 2024, mediante la cual el foro primario no permitió la paralización de los procedimientos en el caso de epígrafe.

Número Identificador
SEN2024 _____

Por los fundamentos que se exponen a continuación, se *confirma* la *Sentencia Parcial* emitida el 11 de julio de 2024 y la *Resolución* emitida el 17 de julio de 2024.

**I.**

El 29 de abril de 2024, Alicea Ortiz presentó una *Demanda* en contra de BPPR y otros, sobre sentencia declaratoria, interdicto preliminar y permanente, nulidad de sentencia y daños y perjuicios. En apretada síntesis, alegó que no fue emplazada personalmente en el caso DCD2014-0800 y que el foro primario no atendió en sus méritos dicho planteamiento, pues no pautó una vista para atender el asunto. Indicó, además, que no se le brindaron todas las alternativas de mitigación de pérdidas y que no se le notificó la *Orden de Lanzamiento* que recibió para que desalojara su hogar.

Posteriormente, el 6 de mayo de 2024, la parte apelada presentó una *Moción para Desestimar la Solicitud de Injunction Preliminar*. En la misma, manifestó que la parte apelante no cumple con los requisitos para que se expidan a su favor los remedios extraordinarios del interdicto y la sentencia declaratoria. Así, sostuvo que los asuntos presentados en la *Demanda* ya fueron atendidos y adjudicados por el foro primario y la apelante está impedida de litigarlos nuevamente a la luz de la doctrina de impedimento colateral por sentencia.

Luego de varios incidentes procesales, el 13 de mayo de 2024, la parte apelante presentó una *Oposición a Moción de Desestimación*. El 20 de mayo de 2024, la parte apelante presentó una *Moción al Expediente Judicial*. En esta, informó al TPI sobre una oferta que cursó a la parte apelada para finiquitar las controversias. Además, acompañó su escrito con un documento que revela que la parte apelada aprobó un plan de modificación del préstamo hipotecario de la parte apelante.

Así las cosas, el 21 de junio de 2024, la parte apelante presentó una *Moción de Paralización de los Procedimientos del Caso Conforme a RESPA*. A grandes rasgos, la parte apelante le informó al TPI que presentó ante la consideración de la parte apelada una solicitud completa de mitigación de pérdidas, por lo que, de conformidad con el *Real Estate Settlement Procedure Act* (RESPA) y la Ley de Ayuda al Deudor Hipotecario, procede la paralización automática de los procedimientos del caso. Oportunamente, el 24 de junio de 2024, la parte apelada presentó una *Urgente Oposición a Moción de Paralización de los Procedimientos del Caso de Epígrafe Conforme a RESPA*. Ese mismo día, la parte apelante presentó una *Urgente Réplica a Oposición a Moción de Paralización de Procedimientos [...]* y se llevó a cabo una Vista Argumentativa.

Luego, el 3 de julio de 2024, la parte apelante presentó una *Moción en Solicitud de Remedio*. El 11 de julio de 2024, el foro primario emitió una *Sentencia Parcial*, notificada el 12 de julio de 2024, mediante la cual desestimó con perjuicio la solicitud de interdicto preliminar y permanente presentada por la parte apelante. El 17 de julio de 2024, el TPI emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la solicitud de paralización de los procedimientos. Dicha *Resolución* fue notificada a las partes el 18 de julio de 2024.

Entretanto, el 28 de julio de 2024, la parte apelante presentó una *Moción de Reconsideración de Sentencia Parcial*. Además, el 2 de agosto de 2024, la parte apelante presentó una *Moción de Reconsideración* con relación a la *Resolución* emitida el 17 de julio de 2024. El 19 de agosto de 2024, la parte apelada presentó una *Oposición a Moción de Reconsideración de Sentencia Parcial*. Ese mismo día, el foro primario emitió una *Resolución*, notificada el 20 de agosto de 2024, mediante la cual declaró *No Ha Lugar* la *Moción*

*de Reconsideración de Sentencia Parcial* que presentó la parte apelante.

El 22 de agosto de 2024, la parte apelada presentó una *Oposición a Moción de Reconsideración*. Consecuentemente, ese mismo día, el TPI emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la *Moción de Reconsideración*.

Inconforme con esa determinación, el 19 de septiembre de 2024, el apelante acudió ante *nos* mediante un recurso de *apelación* en el caso KLAN202400860 y señaló la comisión de los siguientes errores:

> **ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL DESESTIMAR CON PERJUICIO LAS SOLICITUDES DE INTERDICTO PRELIMINAR Y PERMANENTE DE LA PARTE APELANTE EN SU DEMANDA DE ESTE CASO, ADUCIENDO QUE DICHAS SOLICITUDES RESPONDEN A PLANTEAMIENTOS QUE FUERON ADJUDICADOS EN SUS MÉRITOS TANTO POR EL FORO DE INSTANCIA, ASÍ COMO POR TRIBUNALES DE MAYOR JERARQUÍA Y, POR LO TANTO, LE ES DE APLICACIÓN A DICHA DEMANDA LA DOCTRINA DE IMPEDIMENTO COLATERAL POR SENTENCIA.**

> **ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL NO ACOGER LA MOCIÓN DE RECONSIDERACIÓN DE SENTENCIA PARCIAL DE LA PARTE APELANTE EN LA QUE SE DISCUTE Y FUNDAMENTA PORQUE NO SON DE APLICACIÓN LA DOCTRINA DE IMPEDIMENTO COLATERAL POR SENTENCIA, NI LAS DOCTRINAS DE LEY DE CASO NI COSA JUZGADA A LA DEMANDA DEL CASO DE EPÍGRAFE, PORQUE NINGUNO DE LOS PLANTEAMIENTOS QUE SE RECOGEN EN DICHA DEMANDA HAN SIDO ADJUDICADOS EN SUS MÉRITOS NI POR SENTENCIA FINAL Y FIRME NI POR NINGÚN TRIBUNAL DEL PODER JUDICIAL DE ESTA JURISDICCIÓN.**

El 23 de septiembre de 2024, la parte apelante presentó un recurso de *certiorari* en el caso KLCE202401028 y alegó la comisión de los siguientes errores:

> **ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL AVALAR LA CONTINUACIÓN DE LOS PROCEDIMIENTOS DEL CASO DE EPÍGRAFE, PESE A QUE LA PARTE RECURRENTE SOMETIÓ ANTE LA CONSIDERACIÓN DE LA PARTE RECURRIDA UNA**

**SOLICITUD COMPLETA DE MITIGACIÓN DE PÉRDIDAS, LA CUAL SATISFACE EL DERECHO VIGENTE Y OBLIGA A PARALIZAR ESTE CASO.**

**ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL DESATENDER O SOSLAYAR COMPLETAMENTE EN SUS DICTÁMENES RECURRIDOS LA ARGUMENTACIÓN EN DERECHO QUE SATISFACE LA APLICACIÓN A FAVOR DE LA PARTE RECURRENTE DE LA SECCIÓN XIV DEL ARTÍCULO VI DE LA CONSTITUCIÓN DE PUERTO RICO.**

Examinados ambos recursos, este Tribunal emitió una *Resolución* el 25 de septiembre de 2024, concediéndole un término de veinte (20) días a la parte recurrida para que expresara su posición al recurso. Además, se ordenó la consolidación de los recursos KLAN202400860 y KLCE202401028 por tratarse de determinaciones judiciales dentro de un mismo pleito civil. Oportunamente, el 16 de octubre de 2024, el BPPR presentó un *Alegato de Banco Popular de Puerto Rico en Oposición al Recurso de Apelación y Oposición a Expedición de Certiorari*. Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A. Desestimación**

La Regla 10.2 de Procedimiento Civil (32 LPRA Ap. V) le permite al demandado solicitar que se desestime la demanda en su contra antes de contestarla. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis de Puerto Rico, Inc., 2010, pág. 266. La precitada regla dispone lo siguiente:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable. Regla 10.2 de Procedimiento Civil, *supra*.

Así pues, entre las defensas mediante las cuales una parte puede solicitar la desestimación de la causa instada en su contra se encuentra el "dejar de exponer una reclamación que justifique la concesión de un remedio". Regla 10.2 (5) de Procedimiento Civil, *supra*. Véase, además, *Rivera Candela, et al. v. Universal Insurance Company*, 2024 TSPR 99, 214 DPR ___ (2024); *Costas Elena, et al. v. Magic Sport, et al.*, 2024 TSPR 13, 213 DPR __ (2024); *Bonnelly Sagrado v. United Surety*, 207 DPR 715 (2021).

Ante una moción de desestimación fundamentada en la referida regla, "el tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas". *Cobra Acquisitions v. Mun. de Yabucoa, et al.*, 210 DPR 384 (2022). Véase, además, *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409 (2008); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497 (1994). Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. *Costas Elena, et al. v. Magic Sport, et al., supra.*

Asimismo, deberá interpretar las alegaciones de forma conjunta, liberal y de la manera más favorable posible en favor del demandante. *Bonnelly Sagrado v. United Surety, supra; Torres, Torres v. Torres, et al.,* 179 DPR 481 (2010). De hecho, tampoco procede la desestimación de la demanda si esta es susceptible de ser enmendada. *Clemente v. Dept. de la Vivienda*, 114 DPR 763 (1983).

Al atender este tipo de moción, el tribunal deberá tener en cuenta que, conforme lo dispone la Regla 6.1 de Procedimiento Civil (32 LPRA Ap. V, R. 6.1), la demanda sólo tiene que contener "una relación sucinta y sencilla de la reclamación demostrativas de que

el peticionario tiene derecho a un remedio", por lo que la norma procesal que rige establece que las alegaciones solo buscan "notificarle a la parte demandada a grandes rasgos, cuáles son las reclamaciones en su contra." *Torres, Torres v. Torres, et al., supra.* Es por esto que una demanda no será desestimada, salvo que se demuestre "que la parte demandante no tiene derecho a remedio alguno bajo cualesquiera de los hechos que se puedan probar". *Blassino Alvarado v. Reyes Blassino,* 2024 TSPR 93, 214 DPR ___ (2024). Véase, además, *Consejo Titulares v. Gómez Estremera et al.,* 184 DPR 407 (2012); *Aut. Tierras v. Moreno & Ruiz Dev. Corp, supra.* Entiéndase, el asunto a considerar es, "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida". *Rivera Candela, et al. v. Universal Insurance Company, supra*; *Pressure Vessels P.R. v. Empire Gas P.R., supra.* Finalmente, este mecanismo procesal no debe ser utilizado en aquellos casos que envuelven un alto interés público, excepto que no haya duda de que, de los hechos alegados en la demanda, no es posible conceder un remedio adecuado al demandante. *Aut. Tierras v. Moreno & Ruiz Dev. Corp, supra.*

### B. *Injunction* preliminar y permanente

La Regla 57 de Procedimiento Civil (32 LPRA Ap. V, R. 57) y los Artículos 675 al 687 del Código de Enjuiciamiento Civil (32 LPRA secs. 3421 al 3424 y del 3532 al 3533), respectivamente, regulan el recurso de *injunction* o interdicto. Así, este recurso extraordinario se utiliza para prohibir u ordenar la ejecución de determinado acto con el fin de evitar causar perjuicios inminentes o daños irreparables a alguna persona, en aquellos casos en que no hay otro remedio adecuado en ley para obtener ese resultado. *Senado de P.R. v. ELA,* 203 DPR 62 (2019); *E.L.A. v. Asoc. de Auditores,* 147 DPR 669 (1999).

Nuestro ordenamiento jurídico reconoce tres (3) modalidades de *injunction*, éstos son: el *injunction* permanente, *injunction* preliminar y el entredicho provisional.

Nuestro máximo Foro, reiteradamente ha señalado que los tribunales antes de expedir un *injunction*, ya sea preliminar o permanente, deben considerar si existe algún otro remedio eficaz, completo y adecuado en ley. De ser así, entonces no se considerará el daño como irreparable. *Pérez Vda. Muñiz v. Criado*, 151 DPR 355 (2000). Asimismo, se ha establecido que se estiman como remedios legales adecuados aquellos que pueden otorgarse en una acción por daños y perjuicios, en una criminal o cualquiera otra disponible. *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656 (1997).

El daño irreparable que justifica la expedición de este remedio extraordinario del *injunction* es aquel que no puede ser remediado mediante la utilización de otros medios legales disponibles y que no puede ser apreciado con certeza ni debidamente compensado por cualquier indemnización que pudiera recobrarse en un pleito ordinario. Es por ello que, como recurso extraordinario, su concesión recae en la entera discreción del juez. *Pérez Vda. de Muñiz v. Criado, supra.*

Por su parte, el *injunction* preliminar se emite en cualquier momento antes del juicio en su fondo. En la mayoría de los casos se solicita junto a la presentación del pleito, y en caso de urgencia, se le solicita al tribunal el señalamiento de una vista para discutir los méritos de dicha petición. D. Rivé Rivera, *Recursos Extraordinarios*, 2da ed. rev., Programa de Educación Jurídica Continuada, Facultad de Derecho Universidad Interamericana de Puerto Rico, 1996, San Juan, pág. 21. El propósito de este recuso es mantener el *estatus quo* hasta que se celebre el juicio en sus méritos para que así no se produzca una situación que convierta en académica la sentencia

que finalmente se dicte al atender la petición de *injunction permanente* o se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. *VDE Corporation v. F&R Contractors*, 180 DPR 21 (2010); *Rullán v. Fas Alzamora*, 166 DPR 742 (2006). Para poder expedir este tipo de remedio, el tribunal debe citar a una vista, previa notificación, y su vigencia será efectiva desde el momento en que se notifica hasta que se decida, mediante sentencia, la permanencia o no de la solicitud.

Al momento de la expedición del *injunction* preliminar, el tribunal tomará en consideración cualquier cambio en las circunstancias presentes al momento en que se hizo la solicitud y aquéllas que prevalecen al momento en que se va a dictar la orden. *Trigo v. Sobrino de Izquierdo, Inc.*, 72 DPR 449 (1951); *Las Monjas Racing Corp. v. Comisión Hípica*, 57 DPR 522 (1940).  Ahora bien, en los casos en que se solicite un *injunction* preliminar y permanente, el tribunal está facultado para consolidar ambas vistas sin que las partes tengan que presentar evidencia nuevamente. La emisión de una orden de *injunction* preliminar no necesariamente ata al tribunal a la hora de evaluar la expedición del interdicto permanente. *Mun. De Loíza v. Sucns. Suárez, et al*, 154 DPR 333 (2001).

Cónsono con lo anterior, la Regla 57.3 de Procedimiento Civil (32 LPRA Ap. V, R. 57.3) establece los criterios para expedir una orden de entredicho provisional o *injunction* preliminar. Entiéndase, (a) la naturaleza del daño a que está expuesto la parte peticionaria; (b) la irreparabilidad del daño o la existencia de un remedio adecuado en ley; (c) la probabilidad de que la parte promovente prevalezca; (d) la probabilidad de que la causa se torne en académica; (e) el impacto sobre el interés público del remedio que se solicita, y (f) la diligencia y la buena fe con que ha obrado la parte peticionaria.

Con relación a la naturaleza del daño sufrido por la parte, el Tribunal Supremo ha establecido que la discreción judicial debe ser guiada por un balance de equidades. *Misión Ind. P.R. v. J.P. y A.A.A., supra.*

Mientras, al igual que en un *injunction* preliminar, el tribunal antes de emitir un interdicto permanente deberá celebrar una vista en sus méritos. Le corresponderá evaluar los siguientes criterios: (1) si el demandante ha prevalecido o puede prevalecer en un juicio en sus méritos; (2) si el demandante tiene algún otro remedio adecuado en ley o si el *injunction* es el único recurso disponible para vindicar su derecho; (3) el interés público presente o afectado por el pleito; y (4) el balance de equidades entre todas las partes en litigio. *Senado de Puerto Rico v. Gobierno de Puerto Rico, supra.* Este es un remedio interdictal que se produce mediante una sentencia final.

### C. Impedimento colateral por sentencia

La doctrina de cosa juzgada tiene el propósito de finalizar los litigios que fueron adjudicados de forma definitiva y, de este modo, "garantizar la certidumbre y seguridad de los derechos declarados mediante una resolución judicial para evitar gastos adicionales al Estado y a los litigantes". *Presidential v. Transcaribe*, 186 DPR 263 (2012). Véase, además, *PR Wire Prod. v. C. Crespo & Assoc.*, 175 DPR 139 (2008). Así, esta defensa tiene el efecto de evitar que se relitiguen asuntos que fueron o que pudieron litigarse y adjudicarse en el pleito anterior. *Parrilla v. Rodríguez*, 163 DPR 263 (2004). Según ha resuelto el Tribunal Supremo de Puerto Rico, "la presunción de cosa juzgada sólo tendrá efecto si existe la más perfecta identidad de las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron". *Presidential v. Transcaribe, supra.*

El requisito de la identidad de cosas significa que el segundo pleito versa sobre el mismo asunto adjudicado en el primer pleito, aunque las cosas se hayan disminuido o alterado. *Rodríguez Rodríguez v. Colberg Comas*, 131 DPR 212 (1992). Es decir, existe identidad de las cosas "cuando un juez, al hacer una determinación, se expone a contradecir el derecho afirmado en una decisión anterior". *Presidential v. Transcaribe, supra.* Sobre el particular, hay que evaluar no sólo la cosa sobre la cual se origina la controversia, sino también el planteamiento jurídico que se genera en torno a ella". *Íd.*

En cuanto al requisito de identidad de las causas, existe cuando los hechos y fundamentos de las peticiones son idénticos en lo que afecta la cuestión planteada. *Íd.* En otras palabras, al determinar si existe identidad de causas debemos analizar si ambas reclamaciones se basan en la misma transacción o núcleo de hechos. *Íd.* Por otro lado, este requisito "exige que la parte demandante acumule en un pleito todas las posibles teorías legales en virtud de las cuales podría tener derecho a un remedio y que surjan de los mismos hechos transaccionales". *Martínez Díaz v. E.L.A.,* 182 DPR 580 (2011). Lo anterior, ya que el efecto de cosa juzgada aplica no solamente a las reclamaciones alegadas en la demanda, sino también a todas aquellas que pudieron acumularse. *Íd.*

"Aun estando presentes los componentes necesarios para que la doctrina de cosa juzgada surta efecto, la referida figura legal no es absoluta y debe siempre considerarse conjuntamente con el saludable principio de que debe dispensarse justicia en cada caso". *Beníquez et al. v. Vargas et al.,* 184 DPR 210 (2012). "[L]a sentencia anterior es concluyente en cuanto a aquellas materias que de hecho se suscitaron y verdaderamente o por necesidad se litigaron y adjudicaron, pero no es concluyente en cuanto a aquellas materias

que pudieron ser pero que no fueron litigadas y adjudicadas en la acción anterior." *Íd.*

Así pues, la doctrina de cosa juzgada es lo ya resuelto por tribunal competente, lo cual tiene el propósito de impartir finalidad a los dictámenes judiciales. *Casco Sales v. Mun. de Barranquitas*, 172 DPR 825 (2007). Sin embargo, no procede aplicar de forma inflexible la doctrina de cosa juzgada cuando hacerlo derrotaría los fines de la justicia, especialmente si hay envueltas consideraciones de orden público. *Parrilla v. Rodríguez, supra.* Véase, además, *Pérez v. Bauzá*, 83 DPR 220 (1961).

De otro lado, nuestro máximo Foro ha reconocido otra modalidad de cosa juzgada, conocida como la figura jurídica de impedimento colateral por sentencia. *PR Wire Prod. v. C. Crespo & Assoc., supra.* Véase, además, *A & P Gen. Contractors v. Asoc. Caná*, 110 DPR 753 (1981). La misma surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final. *PR Wire Prod. v. C. Crespo & Assoc., supra.* Por lo tanto, tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén involucradas causas de acción distintas. *Íd.*

Así, el impedimento colateral por sentencia impide que se litigue en un pleito posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior. *PR Wire Prod. v. C. Crespo & Assoc., supra.* No obstante, a diferencia de la doctrina de cosa juzgada, la aplicación de la figura de impedimento colateral por sentencia no exige la identidad de causas. *Íd.* Esto es, que la razón de pedir plasmada en la demanda sea la misma en ambos litigios. *Íd.*

Al igual que la doctrina de cosa juzgada, el propósito de la figura de impedimento colateral por sentencia es promover la

economía procesal y judicial, y amparar a los ciudadanos del acoso que necesariamente conlleva litigar en más de una ocasión hechos ya adjudicados. *PR Wire Prod. v. C. Crespo & Assoc., supra.*

### D. Ley de Ayuda al Deudor Hipotecario

La Ley de Ayuda al Deudor Hipotecario, Ley Núm. 169 de 9 de agosto de 2016, según enmendada, (32 LPRA sec. 2891 *et seq.*), (Ley Núm. 169-2016), se creó con el propósito de ofrecerle a los ciudadanos una herramienta adicional para que puedan cumplir con sus obligaciones hipotecarias. En particular, la Ley Núm. 169-2016, *supra*, le provee al deudor hipotecario una oportunidad de organizarse, estructurarse y manejar sus finanzas, mientras penda la evaluación por parte de la entidad bancaria, respecto a la cualificación para un proceso de mitigación de pérdidas en el cual sea debidamente orientado sobre las opciones de las que dispone, tanto a nivel federal, como local, a tal fin. Véase, Exposición de Motivos de la Ley Núm. 169-2016, *supra.*

La Exposición de Motivos de la Ley Núm. 169-2016, *supra*, específicamente establece que el proceso para evaluar una solicitud de mitigación de pérdidas estará regulado y regido por los términos del Reglamento X, el cual forma parte de la legislación federal conocida como *Real Estate Settlement Procedures Act*, 12 U.S.C. § 2601, (en adelante RESPA). Así pues, la Ley Núm. 169-2016 aclara que la norma estatal no puede ir "en contraposición con el Reglamento X, ni con la Ley 184-2012, mejor conocida como la Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecución de Hipoteca de una Vivienda Principal [...]". Véase, Exposición de Motivos de la Ley Núm. 169-2016, *supra.*

En lo atinente al asunto ante nuestra consideración, el Artículo 3 de la Ley Núm. 169-2016 (32 LPRA sec. 2893), establece, entre otras cosas, que:

[e]n el caso en que ya haya comenzado un proceso legal de cobro de dinero y ejecución hipotecaria, y el deudor hipotecario haya entregado el formulario solicitando mitigación de pérdidas y sometido los documentos requeridos para la evaluación de su caso, el proceso legal deberá detenerse, según las disposiciones de la Reglamentación X, mientras se culmina el proceso de cualificación del deudor hipotecario y éste adviene en conocimiento de que cualifica o no. **Lo anterior no aplica en aquellos casos en los cuales se haya dictado una sentencia por el tribunal correspondiente, y la misma sea final, firme e inapelable**. (Énfasis nuestro).

Cónsono con lo anterior, la Reglamentación X (*Regulation X*), 12 CFR sec. 1024.1, *et seq.,* prohíbe que un agente o acreedor hipotecario incurra en la práctica dual de evaluar una solicitud sobre mitigación de pérdida, mientras promueve o continúa el curso de un proceso de ejecución de hipoteca en los tribunales (*dual tracking).* Al respecto y en ocasión a que se haya presentado una solicitud de mitigación, luego de iniciado el proceso judicial correspondiente, la referida reglamentación dispone:

(g) Prohibition on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:

(1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

(2) The borrower rejects all loss mitigation options offered by the servicer; or

(3) The borrower fails to perform under an agreement on a loss mitigation option. 12 CFR secs. 1024.41 (f) (2) y (g).

### III.

En la presente causa, la parte apelante alega que erró y abusó de su discreción el foro primario al desestimar con perjuicio las solicitudes de interdicto preliminar y permanente de su *Demanda*, aduciendo que dichas solicitudes responden a planteamientos que fueron adjudicados en sus méritos tanto por el TPI, así como por

tribunales de mayor jerarquía y, por lo tanto, les es de aplicación a dicha *Demanda* la doctrina de impedimento colateral por sentencia. Indicó, además, que erró y abusó de su discreción el foro de instancia al no acoger la *Moción de Reconsideración de Sentencia Parcial,* en la que se discute y fundamenta porque no son de aplicación la doctrina de impedimento colateral por sentencia, ni las doctrinas de ley del caso, ni cosa juzgada a la *Demanda* del caso de epígrafe.

A su vez, la parte apelante aduce que erró y abusó de su discreción el foro primario al avalar la continuación de los procedimientos del caso de epígrafe, pese a que presentó ante la consideración de la parte apelada una solicitud completa de mitigación de pérdidas, la cual satisface el derecho vigente y obliga a paralizar este caso. Finalmente, acentuó que erró y abusó de su discreción el TPI al desatender o soslayar completamente en los dictámenes recurridos la argumentación en derecho que satisface la aplicación a su favor de la Sección XIV del Artículo VI de la Constitución de Puerto Rico.

Un examen cuidadoso del expediente ante *nos*, nos lleva a concluir que la *Sentencia Parcial* del 11 de julio de 2024 y la *Resolución* del 17 de julio de 2024, son conforme a derecho. *Veamos.*

En el caso ante *nos*, la parte apelante presentó una *Demanda* sobre sentencia declaratoria, interdicto preliminar y permanente, nulidad de sentencia y daños y perjuicios. En la misma, entre otras cosas, solicita la nulidad de la sentencia en el caso DCD2014-0800. No obstante, surge del expediente ante nuestra consideración que, el 22 de junio de 2022, la parte apelante presentó en el caso DCD2014-800 una *Urgente Moción de Nulidad de Sentencia dentro del mismo Pleito por Falta de Jurisdicción sobre la Parte Demandada […].* Consecuentemente, el 2 de agosto de 2022, el TPI emitió una *Resolución y Orden* mediante la cual declaró *No Ha Lugar* la solicitud

de nulidad de sentencia, pues ya había adjudicado los méritos de ese mismo planteamiento mediante una *Orden* emitida el 18 de marzo de 2019.

Posteriormente, la parte apelante acudió ante este Tribunal mediante un recurso de *certiorari*, el cual fue desestimado bajo el fundamento de falta de jurisdicción. Inconforme, la parte apelante acudió ante el Tribunal Supremo y señaló la comisión de seis (6) errores; en los cuales, en esencia, planteó (1) la nulidad de los dictámenes emitidos por el foro primario por falta de notificación a José Brown Tejera; (2) la falta de jurisdicción del foro primario porque no fue emplazada personalmente; (3) el incumplimiento del BPPR con los procesos de mitigación de perdidas; (4) la disponibilidad de remedios bajo RESPA y el Reglamento X; (5) la comisión de *dual tracking* por parte del BPPR; y, (6) el incumplimiento del BPPR con su deber de proveerle a la apelante todas las alternativas disponibles en el mercado para evitar la ejecución de la propiedad. Acto seguido, nuestro máximo Foro denegó el recurso de *certiorari*, así como las reconsideraciones solicitadas.

Subsiguientemente, el 19 de abril de 2024, diez (10) días antes de que se presentara la causa de acción que nos ocupa, la apelante solicitó un remedio interdictal en el caso DCD2014-0800. En dicha solicitud, adujo que los dictámenes en ese caso eran nulos y solicitó la paralización del lanzamiento de la propiedad que había sido ejecutada. Consecuentemente, el 26 de abril de 2024, el TPI declaró *No Ha Lugar* la solicitud de remedio interdictal que presentó la parte apelante.

Así las cosas, el 29 de abril de 2024, la apelante presentó la *Demanda* de autos. De una lectura detallada de la *Demanda,* se desprende que la apelante solicitó sustancialmente los mismos

remedios que ya había solicitado en el caso DCD2014-0800 y que fueron declarados sin lugar en todas las instancias.

Según surge del derecho que antecede, la figura jurídica de impedimento colateral por sentencia surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final. *PR Wire Prod. v. C. Crespo & Assoc.*, *supra.* Por lo tanto, tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén involucradas causas de acción distintas. *PR Wire Prod. v. C. Crespo & Assoc., supra.*

Así pues, no incidió el TPI al desestimar con perjuicio las solicitudes de interdicto preliminar y permanente, pues dichas solicitudes responden a planteamientos que fueron adjudicados en sus méritos por el foro de instancia, los cuales son finales y firmes, y aunque vino a este tribunal intermedio, fue desestimado por un panel hermano por falta de jurisdicción. Además, no debemos obviar que la solicitud de *injunction* preliminar que presentó Alicea Ortiz no cumplió con los criterios establecidos en la Regla 57.3 de Procedimiento Civil*, supra.* Tampoco se justifica la expedición de este remedio ante la inexistencia de un daño irreparable. Véase, *Pérez Vda. de Muñiz v. Criado*, *supra.* Por consiguiente, no se cometieron el primer y segundo señalamiento de error.

No podemos pasar por desapercibido que, el propósito de la figura de impedimento colateral por sentencia es promover la economía procesal y judicial, y amparar a los ciudadanos del acoso que necesariamente conlleva litigar en más de una ocasión hechos ya adjudicados. *PR Wire Prod. v. C. Crespo & Assoc., supra.* Asimismo, tampoco debemos obviar que procede la desestimación de una demanda cuando se demuestre que la parte demandante no tiene derecho a remedio alguno bajo cualesquiera de los hechos que se puedan probar. *Blassino Alvarado v. Reyes Blassino, supra.*

De otro lado, debemos atender el tercer señalamiento de error. Según surge del expediente ante nuestra consideración, la parte apelante presentó ante el TPI una *Moción de Paralización de los Procedimientos del Caso Conforme a RESPA*. En esta, la parte apelante le informó al foro primario que presentó ante la consideración de la parte apelada una solicitud completa de mitigación de perdidas, por lo que, de conformidad con el RESPA y la Ley de Ayuda al Deudor Hipotecario, procedía la paralización automática de los procedimientos del caso. No tiene razón.

Al hacer un análisis exhaustivo de ambos estatutos, podemos colegir que las disposiciones de RESPA y de la Ley Núm. 169-2016, *supra*, son inaplicables al caso de epígrafe. Específicamente, el Artículo 3 de la Ley Núm. 169-2016, *supra*, establece que en aquellos casos en que se haya comenzado un proceso legal de cobro de dinero y ejecución de hipoteca, y el deudor hipotecario haya entregado el formulario solicitando mitigación de pérdidas y sometido los documentos requeridos para la evaluación de su caso, el proceso legal deberá detenerse, según las disposiciones de la Reglamentación X, mientras se culmina el proceso de cualificación del deudor hipotecario y éste adviene en conocimiento de que cualifica o no.

Es decir, procede la paralización de los procedimientos al inicio o en la continuación del proceso legal de cobro de dinero y ejecución de hipoteca del deudor hipotecario. Ese no es el caso ante *nos*. A esos efectos, el mencionado Artículo 3 de la Ley Núm. 169-2016, *supra*, establece claramente que, "lo anterior no aplica en aquellos casos en los cuales se haya dictado una sentencia por el tribunal correspondiente, y la misma sea final, firme e inapelable".

En el caso de epígrafe, la parte apelante solicita la nulidad de una sentencia dictada en el 2014, la cual a todas luces es final, firme

e inapelable. Por lo tanto, no procede la paralización del proceso legal, esto pues el proceso judicial de cobro de dinero y ejecución de hipoteca ya culminó, solo restan por atender los procedimientos *post* sentencia.

Por último, no incidió el TPI al no aplicar la Sección XIV del Artículo VI de la Constitución de Puerto Rico al caso de epígrafe. La Sección XIV del Artículo VI de la Constitución de Puerto Rico establece que:

> Ninguna corporación estará autorizada para efectuar negocios de compra y venta de bienes raíces; ni se le permitirá poseer o tener dicha clase de bienes a excepción de aquellos que fuesen racionalmente necesarios para poder llevar adelante los propósitos a que obedeció su creación; y el dominio y manejo de terrenos de toda corporación autorizada para dedicarse a la agricultura estarán limitados, por su carta constitutiva, a una cantidad que no exceda de quinientos acres; y esta disposición se entenderá en el sentido de impedir a cualquier miembro de una corporación agrícola que tenga interés de ningún género en otra corporación de igual índole.

> Podrán, sin embargo, las corporaciones efectuar préstamos, con garantías sobre bienes raíces y adquirir éstos cuando sea necesario para el cobro de los préstamos; pero deberán disponer de dichos bienes raíces así obtenidos dentro de los cinco años de haber recibido el título de propiedad de los mismos.

> Las corporaciones que no se hayan organizado en Puerto Rico, pero que hagan negocios en Puerto Rico, estarán obligadas a cumplir lo dispuesto en esta sección, hasta donde sea aplicable.

> Estas disposiciones no impedirán el dominio, la posesión o el manejo de terrenos en exceso de quinientos acres por el Estado Libre Asociado y sus agencias o instrumentalidades.

Al hacer un análisis de la citada disposición constitucional, podemos colegir que esta no es de aplicación a los hechos del caso de autos. Asimismo, no es oponible a una entidad financiera que retiene una propiedad cuando el deudor le impide disponer de ella por la vía judicial.

Es conveniente recordar que, el BPPR no es una corporación agrícola, no se dedica a actividades agrarias y no otorgó el préstamo que da lugar a esta causa de acción para propósitos agrícolas. En fin, los argumentos de la apelante con relación a la presunta

violación de la Sección XIV del Artículo VI de la Constitución son completamente frívolos.

**IV.**

Por los fundamentos antes expuestos, se *confirma* la *Sentencia Parcial* emitida el 11 de julio de 2024 y la *Resolución* emitida el 17 de julio de 2024. En consecuencia, se devuelve el caso al foro primario para la continuación de los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones