Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| JOSÉ FRANCISCO VARGAS CRUZ<br><br>Demandante-Apelante<br><br>Vs.<br><br>FERDINAND PÉREZ ROMÁN Y PRÁCTICO EVENTS, LLC<br><br>Demandados-Apelados | KLAN202401075 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2024CV09722<br><br>Sala: 904<br><br>Sobre: ORDEN DE ENTREDICHO PROVISIONAL, INTERDICTO PRELIMINAR Y PERMANENTE Y DAÑOS Y PERJUICIOS |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de marzo de 2025.

Comparece José Francisco Vargas Cruz (en adelante, apelante o señor Vargas Cruz), a través del presente recurso de apelación, y nos solicita que revoquemos la *Sentencia* emitida y notificada, el 30 de octubre de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI).[1] Mediante dicho dictamen, el TPI declaró Ha Lugar la *Moción Asumiendo Representación Legal, Moción en Cumplimiento de Orden y en Oposición a Solicitud de Entredicho Preliminar y Permanente* (Moción)[2] presentada por Ferdinand Pérez Román y Práctico Events LLC (en adelante, señor Pérez Román) (en conjunto, parte apelada o Jugando Pelota Dura). Mediante la *Sentencia* recurrida, el foro de primera instancia

---

[1] Apéndice del recurso a las págs. 56-75.
[2] *Íd.*, a las págs. 38-42.

Número Identificador

SEN2025 _____

desestimó en su totalidad el recurso presentado por el señor Vargas Cruz y le impuso el pago de tres mil ($3,000.00) dólares, en concepto de honorarios de abogado por temeridad, a favor de la parte apelada, así como el pago de los gastos y las costas del litigio.

Por los fundamentos que exponemos a continuación, se *confirma* el dictamen apelado.

*-I-*

El caso de marras tuvo su génesis cuando el 21 de octubre de 2024, la parte apelante instó una *Demanda,* en contra de la parte apelada.[3] En esencia, el señor Vargas Cruz alegó que la parte apelada había impedido que el apelante participara en el programa televisivo *Jugando Pelota Dura* como su invitado. Sostuvo que se había invitado al programa a otros candidatos a la alcaldía de San Juan y que se habían presentado gráficas e información sobre ellos. Asimismo, afirmó que de manera recurrente se le excluía de dichas participaciones y se omitía su nombre en las gráficas y en la información divulgada durante el programa. Por otro lado, la parte apelante expresó que, a pesar de haber realizado múltiples gestiones, el equipo de producción del programa televisivo se negó a coordinar una entrevista y lo excluyó de los análisis y comentarios transmitidos. Esbozó que, conforme a los artículos 2.2, 5.1, 7.15 y 12.8 del Código Electoral,[4] las actuaciones de la parte apelada restringieron de manera injusta su exposición mediática y su participación en el proceso electoral. Esta conducta, según adujo, afectó el derecho de los electores a recibir información adecuada y constituyó un acto de discrimen motivado por su condición de candidato independiente.

Por lo anterior, solicitó al TPI como remedios interdictales: (i) ordenara a Jugando Pelota Dura a cesar y desistir de omitir o

---

[3] Apéndice del recurso a las págs. 1-16.
[4] 16 LPRA secs. 4502, 4561, 4625 y 4808.

invisibilizar al apelante en su carácter de candidato independiente a la alcaldía de San Juan; y (ii) le requiriera coordinar la participación del apelante en el programa, otorgándole un tiempo igual al concedido a los demás candidatos. Asimismo, solicitó al foro primario, que impusiera a la parte apelada la obligación de resarcir pecuniariamente al apelante, por una suma no menor de un millón ($1,000,000.00) de dólares, en concepto de daños y perjuicios derivados de sus actuaciones culposas.

Luego de varias instancias procesales, el 24 de octubre de 2024 la parte apelada presentó una *Moción*[5] mediante la cual manifestaron que el señor Vargas Cruz había asistido al programa y que su participación había sido de aproximadamente ocho (8) minutos. Arguyeron que al tratarse de una entidad privada y no del Estado, le era inaplicable la presunta violación la Ley Electoral o Constitucional. Afirmaron que el concepto de *equal time*, dispuesto en la *Communications Act of 1934*, 47 USC sec. 315 (b), no era aplicable a los reportajes noticiosos ni a los análisis de interés público por tratarse de expresiones amparadas bajo una mayor libertad editorial. Finalmente, esbozaron que la parte demandante no había cumplido con los requisitos necesarios para la concesión de los remedios interdictales solicitados y que el reclamo por daños y perjuicios estimados en millones de dólares carecía de fundamento por basarse en una proyección especulativa que pretendía imponer una censura previa. Por lo anterior, solicitaron al TPI que desestimara la Demanda incoada por el apelante.

Posteriormente, mediante *Orden* emitida y notificada el 25 de octubre de 2024,[6] el Tribunal ordenó al señor Vargas Cruz a presentar su escrito en réplica a la *Moción* presentada por la parte

---

[5] Apéndice del recurso a las págs. 38-42.
[6] Apéndice del recurso a la pág. 43.

apelada. Por otro lado, señaló vista argumentativa y/o evidenciaria para el lunes 28 de octubre de 2024.[7]

En cumplimiento con lo ordenado, el 26 de octubre de 2024 el apelante presentó su *Escrito en Cumplimiento de Orden y Réplica* (Réplica).[8] En lo atinente, el apelante afirmó tener legitimación activa para instar el recurso al fundamentar su causa de acción en la vulneración de sus derechos bajo el Código Electoral de Puerto Rico. Explicó que dicha causa no se basaba en una violación del *Equal Opportunity Time* conforme a la legislación federal, sino en la reiterada omisión de la parte apelada al excluirlo de las encuestas y suprimir la información sobre su candidatura en el programa televisivo. Concluyó que tal omisión evidenciaba una manipulación deliberada de datos en el contexto electoral, con el propósito de restringir la transparencia y el derecho de los ciudadanos a recibir información confiable, en menoscabo de sus derechos fundamentales.

De acuerdo con el calendario establecido, el 28 de octubre de 2024, se celebró la vista argumentativa en la cual ambas partes expusieron sus respectivos argumentos a favor y en contra de las solicitudes interdictales de epígrafe. **Cabe señalar que, el TPI decretó un receso para reunirse con los abogados de las partes y auscultar la posibilidad de un acuerdo. Sin embargo, el señor Vargas Cruz no accedió a transigir el caso.[9]**

De ahí, producto de la vista celebrada el TPI emitió y notificó la *Sentencia* recurrida mediante la cual declaró Ha Lugar la *Moción* presentada por la parte apelada. El foro de primera instancia desestimó en su totalidad el recurso presentado por el señor Vargas Cruz y le impuso el pago de tres mil ($3,000.00) dólares, en concepto

---

[7] Apéndice del recurso a la pág. 44.
[8] *Íd.,* a las págs. 45-52.
[9] *Íd.,* a la pág. 55. Énfasis nuestro.

de honorarios de abogado por temeridad a favor de la parte apelada, así como el pago de los gastos y las costas del litigio.

Inconforme con lo resuelto, el 2 de diciembre de 2024, el señor Vargas Cruz acudió ante esta Curia mediante un recurso de apelación y señaló la comisión de los siguientes errores:

1. Desestimó totalmente la Demanda, por carecer de la factibilidad suficiente, para sostener una reclamación válida susceptible a la concesión de uno (1) o más remedios, a base de un análisis restrictivo y contradictorio de sus hechos, aunque los aceptó como bien alegados, lo cual resultó contrario a las Reglas de Procedimiento Civil y su casuística interpretativa.

2. Denegó [el] otorgamiento de los remedios interdictales solicitados, por no cumplir con los criterios, para expedir órdenes de entredicho provisional, de interdicto preliminar y de interdicto permanente, y estar impedido de aplicar los principios legales y de equidad, que fueron invocados por el apelante, a la parte apelada, la cual estaba compuesta por una persona natural y una entidad privada, a las que no se les puede censurar previamente y consecuentemente, coartar su derecho a la libertad de expresión, lo cual fue ajeno a la legislación y reglamentación, que regula el recurso extraordinario del *injuction,* y a su jurisprudencia interpretativa.

3. Negarle su causa de acción, por daños y perjuicios, al apelante, lo cual se apartó de la legislación civil y corporativa y de su casuística interpretativa.

4. Imponerle el pago de honorarios de abogado, por temeridad, y de los gastos y las costas del pleito, a la parte apelante, lo cual no fue afín con las Reglas de Procedimiento Civil de 2009 y su jurisprudencia interpretativa.

Por otro lado, el 16 de enero de 2025, compareció la parte apelada mediante *Moción Cumplimiento de Orden y Oposición a la Apelación.* Con el beneficio de la comparecencia de ambas partes, procederemos a disponer del presente recurso.

*-II-*

*-A-*

La Regla 10.2 de Procedimiento Civil, permite que una parte demandada solicite la desestimación de una causa de acción presentada en su contra si resulta evidente que, de las alegaciones de la demanda, prosperará alguna de las defensas afirmativas que establece la misma regla. 32 LPRA Ap. V, R. 10.2. Esta moción se basará en al menos uno de los siguientes fundamentos: (1) la falta de jurisdicción sobre la materia o (2) la falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento (4) insuficiencia del emplazamiento del diligenciamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio,** o (6) dejar de acumular una parte indispensable. *Íd.* Énfasis nuestro. La parte que presente dicha moción de desestimación deberá acumular todas las defensas que la regla permite o, de no hacerlo, se entenderán renunciadas con excepción a la defensa de jurisdicción sobre la materia o las contempladas en la Regla 10.8 de Procedimiento Civil. 32 LPRA Ap. V, R. 10.7 y 10.8; *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043, 1066 (2020).

De ordinario, al considerarse una moción de desestimación al amparo de esta regla, los tribunales tienen que tomar como cierto y de la forma más favorable para la parte demandante todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 84 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 396 (2022). Cónsono con lo anterior, los foros adjudicativos tienen el deber de interpretar las alegaciones de una demanda de manera conjunta y liberalmente a favor de la parte demandante. *Eagle Security v. Efrón Dorado et al.*, supra, pág. 84; *González Méndez v. Acción Social et al.*, 196 DPR 213, 234 (2016).

Para que prevalezca una solicitud de desestimación al amparo de la referida Regla 10.2 de Procedimiento Civil, el tribunal debe convencerse con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015). Así pues, los foros judiciales deben ponderar si a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es suficiente para establecer una reclamación válida. *Eagle Security v. Efrón Dorado et al.*, supra, pág. 84.

Por tanto, de ordinario se debe conceder la desestimación cuando existan circunstancias que permitan a los tribunales determinar, sin ambages, que la demanda carece de todo mérito o que la parte demandante no tiene derecho a obtener algún remedio. *Gonzalez Mendez v. Accion Social et al.*, supra, pág. 235. A tenor con lo antes señalado, el Tribunal Supremo federal ha explicado que para evaluar y determinar si las alegaciones en una demanda son factibles y no meramente especulativas, los tribunales deben llevar a cabo un análisis contextual de dos etapas. *Ashcroft v. Igbal,* 556 US 662, 678 (2009). En la primera etapa, el tribunal deberá considerar como ciertos los hechos en la demanda con excepción de las alegaciones concluyentes, las conclusiones de derecho y los hechos genéricos. *Íd.* La segunda etapa, consiste en determinar si con base en las alegaciones bien fundamentadas en la demanda, el demandante ha establecido una reclamación que merezca la concesión de un remedio. *Íd.*, pág. 679. El tribunal decidirá si en vista de todas las circunstancias del caso, el demandante ha presentado una reclamación factible o si la causa de acción debe ser desestimada. *Íd.*

**-B-**

La Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, regula el recurso extraordinario del *injunction* o interdicto. En particular, la referida regla establece la existencia de tres (3) modalidades de *injunction,* éstos son: el *injunction* permanente, *injunction* preliminar y el entredicho provisional. Adoptado del sistema de equidad inglés, este recurso se utiliza para prohibir u ordenar la ejecución de determinado acto con el fin de evitar causar perjuicios inminentes o daños irreparables a alguna persona, en aquellos casos en que no existe otro remedio adecuado en ley para obtener ese resultado. *Senado de Puerto Rico v. Gobierno de Puerto Rico,* 203 DPR 62, 71 (2019); *E.L.A. v. Asociación de Auditores,* 147 DPR 669, 679 (1999). En síntesis, el daño irreparable que justifica la expedición del recurso extraordinario del *injunction* es aquel que no puede ser remediado mediante la utilización de otros medios legales disponibles y que no puede ser debidamente compensado por cualquier indemnización que pudiera recobrarse en un pleito ordinario. Es por lo anterior, que el *injunction* por su naturaleza de recurso extraordinario, se expide con carácter discrecional y mientras exista algún remedio eficaz, completo y adecuado en ley, no se considera el daño como irreparable. *Pérez Vda. de Muñiz v. Criado Amunategui,* 151 DPR 355, 372 (2000).

El propósito fundamental del *injunction* preliminar es mantener el *status quo* hasta que se celebre el juicio en sus méritos para que no se produzca una situación que convierta en académica la sentencia que finalmente se dicte al atender la petición de *injunction* permanente, o se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. *VDE Corp. v. F&R Contractors,* 180 DPR 21, 41 (2010); *Rullán v. Fas Alzamora,* 166 DPR 742, 764 (2006). Para poder expedir este tipo de remedio, el tribunal debe evaluar a la luz de los siguientes factores o criterios:

(1) la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction*; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne en académica de no concederse el remedio; (5) y el posible impacto sobre el interés público. *VDE Corp. v. F&R Contractors*, supra, pág. 41. Es menester señalar que, al momento de la expedición del *injunction* preliminar, el tribunal tomará en consideración cualquier cambio en las circunstancias presentes al momento en que se hizo la solicitud y aquéllas que prevalecen al momento en que se va a dictar la orden. *Trigo Hnos. v. Sobrino Izquierdo*, 72 DPR 449, 465 (1951); *Las Monjas Racing Corp. v. Comisión Hípica*, 57 DPR 522, 524 (1940).

Por otro lado, cuando se trate de un *injunction* permanente, el tribunal deberá celebrar una vista en sus méritos. Le corresponderá evaluar los siguientes criterios: (1) si el demandante ha prevalecido o puede prevalecer en un juicio en sus méritos; (2) si el demandante tiene algún otro remedio adecuado en ley o si el *injunction* es el único recurso disponible para vindicar su derecho; (3) el interés público presente o afectado por el pleito; y (4) el balance de equidades entre todas las partes en litigio. *Senado de Puerto Rico v. Gobierno de Puerto Rico*, supra, pág. 72. Este es un remedio interdictal que se produce mediante una sentencia final.

Mientras, el auto de entredicho provisional es un remedio de similar carácter al del *injunction* preliminar, sin embargo, dicho auto puede ser expedido sin notificación previa al demandado. *E.L.A. v. Asociación de Auditores*, supra, pág. 679. Por lo anterior, al ser expedido sin notificación previa al demandado y sin oportunidad para ser oído, la petición ha de ser juramentada o estar acompañada de declaración jurada y de ella deben surgir los motivos que

justifican su concesión debido a que se causarán daños, perjuicios o pérdidas irreparables al peticionario antes de notificar y escuchar al demandado. *Íd.* Además, el solicitante está en la obligación de certificar al tribunal las diligencias efectuadas para notificar a la parte adversa, si alguna, o las razones por las que entiende no procede la notificación previa. 32 LPRA Ap. V R. 57.1.

La aplicación del mecanismo del *injunction* requiere que los tribunales ejerzan su discreción judicial con celo y buen juicio. Asimismo, el Tribunal Supremo de Puerto Rico ha establecido que el *injunction* debe concederse en aquellos casos de clara necesidad y solamente ante una demostración de indudable e intensa violación de un derecho. *APPR v. Tribunal Superior,* 103 DPR 903, 906 (1995). Del mismo modo, ha expresado que **la decisión del tribunal de instancia para conceder o denegar la orden de *injunction* no será revocada en apelación a menos que se demuestre que dicho foro abusó de su facultad discrecional.** *ELA v. Asoc. de Auditores,* supra, pág. 680. Énfasis nuestro.

### -C-

La libertad de palabra y de prensa es un derecho fundamental. *Méndez Arocho v. El Vocero,* 130 DPR 867 (1992). Ese derecho emana de la Sec. 4, Art. II, de la Constitución de Puerto Rico y de la Primera Enmienda de la Constitución de los Estados Unidos de América. Su esencia estriba en impedir la restricción arbitraria del contenido de publicaciones, así como el medio, lugar y manera en que se realicen, no importa su veracidad, popularidad o simpatía. *Pérez v.Vda. de Criado,* 151 DPR 355 (2000).

Los derechos de libertad de expresión y de prensa protegen tanto el contenido del mensaje como el medio y el lugar donde se ejercita. *Coss v. C.E.E.,* 137 DPR 877 (1995). Cónsono con lo anterior, se ha resuelto también que "el ejercicio de la libertad de palabra y de prensa no depende de que lo que se diga o publique sea

cierto y que tampoco puede coartarse dicha libertad en aras de evitar un escándalo". *Aponte Martínez v. Lugo,* 100 DPR 282, 286 (1971), citando a *Near v. Minnesota,* 283 U.S. 697, 721-722 (1931).

Por otro lado, el Tribunal Supremo de Puerto Rico reconoció en *Aponte Martínez v. Lugo,* supra, a la pág. 285, que el Tribunal Supremo federal "ha rechazado y desacreditado las tentativas de censura previa, especialmente las que, como en el caso de autos, se han pretendido llevar a cabo mediante interdictos (*injunctions*)". En *Alexander v. United States,* 509 US 544, 550 (1993), el Tribunal Supremo federal, definió la censura previa de la siguiente forma:  The term "prior restraint" is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur".

Debido a lo anterior, la llamada prohibición a la censura previa (*prior restraint*) es un principio fundamental del derecho constitucional, en el sentido de que toda tentativa de censura previa llega al Tribunal acompañada de una fuerte presunción de inconstitucionalidad. *Aponte Martínez v. Lugo,* supra, pág. 288. Sin embargo, el Tribunal Supremo reconoce que solo en tres circunstancias específicas los tribunales han permitido que se prohíba la publicación de determinada información. Dichas circunstancias son: (1) cuando una nación está en guerra; (2) cuando se trata de publicaciones obscenas; y (3) cuando se trata de exhortaciones a actos de violencia y al derrocamiento por la fuerza del gobierno ordenado. *Pérez Vda. Muñiz v. Criado,* supra, págs. 369-370.

### -D-

El Art. 1536 del Código Civil de 2020, 31 LPRA sec. 10801, codificó la responsabilidad extracontractual por daños y perjuicios como "[l]a persona que por culpa o negligencia causa daño a otra,

viene obligada a repararlo". Ahora bien, sobre el concepto de culpa o negligencia, el Art. 1163 del Código Civil dispone lo siguiente:

> La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exige la naturaleza de la obligación y corresponde a las circunstancias de las personas, del tiempo y del lugar. Cuando la obligación no expresa la diligencia que debe prestarse en su cumplimiento, se exige la que corresponde a una persona prudente y razonable. La responsabilidad que procede de la negligencia es exigible en el cumplimiento de toda clase de obligaciones, pero los tribunales, según los casos, pueden moderarla. 31 LPRA sec. 9315.

El Tribunal Supremo de Puerto Rico ha establecido que una persona podrá reclamar un daño sufrido por la culpa o negligencia de otra persona cuando concurren tres (3) requisitos: (1) un acto u omisión culposa o negligente; (2) una relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) un daño real causado al reclamante. *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).

Sobre el requisito de la relación causal, en nuestra jurisdicción aplica la doctrina de la causalidad adecuada. Esta doctrina establece que no es causa de responsabilidad toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general. *López v. Porrata Doria*, 169 DPR 135, 151-152 (2006). Nuestro Tribunal Supremo expresó lo siguiente sobre la causa adecuada: "un daño podrá considerarse como el resultado probable y natural de un acto u omisión negligente, si luego del suceso —mirándolo retrospectivamente— éste parece ser la consecuencia razonable y común de la acción u omisión de que se trate". *Santiago v. Sup. Grande*, 166 DPR 796, 818 (2006).

***-E-***

La Regla 44.1 de Procedimiento Civil, dispone, en lo pertinente, lo siguiente en relación con las costas y los honorarios de abogado:

(a)*Su concesión.* — Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra.

[. . .].

(d)*Honorarios de abogado.* En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o dependencias haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado. 32 LPRA Ap. V, Regla 44.1.

El Tribunal Supremo de Puerto Rico ha establecido que la imposición de honorarios de abogado es discrecional, pero la referida Regla 44.1(d) de Procedimiento Civil es clara en el sentido de que cuando una parte ha procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado. *Fernández Marino v. San Juan Cement Co., Inc.*, 118 DPR 713, 717 (1987). Es decir, determinada la existencia de temeridad, la condena de honorarios es imperativa. *Blas v. Hosp Guadalupe,* 146 DPR 267, 334 (1998).

Nuestra jurisprudencia ha definido en múltiples ocasiones el concepto de temeridad como aquella conducta que provoca innecesariamente un pleito, prolonga un litigio que pudo haberse evitado o impone a la otra parte la realización de gestiones superfluas. *Íd.,* págs. 334-335. En otras palabras, la temeridad constituye una actitud que incide directamente en el procedimiento y afecta el buen funcionamiento y administración de la justicia. *Fernández v. San Juan Co. Inc.*, supra, pág. 718. En atención a ello, el propósito de la imposición de honorarios de abogado en casos de temeridad es establecer una penalidad a un litigante perdidoso que,

por su terquedad, obstinación, contumacia e insistencia en una postura carente de fundamentos, obliga injustificadamente a la otra parte a asumir las molestias, los gastos, el trabajo y las inconveniencias de un pleito. *Íd.* Asimismo, el Tribunal ha reconocido que esta sanción no solo tiene un efecto punitivo, sino que también persigue desalentar la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa por los perjuicios económicos y las molestias ocasionadas por la parte adversa. *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 505 (2010).

En consecuencia, el Tribunal Supremo ha establecido que, al cuantificar los honorarios, los tribunales de instancia pueden tomar en consideración factores tales como: (i) la naturaleza del litigio, (ii) las cuestiones de derecho envueltas en el mismo, (iii) la cuantía en controversia, (iv) el tiempo invertido, (v) los esfuerzos y actividad profesional que hayan tenido que desplegarse y, (vi) la habilidad y reputación de los abogados envueltos. *Corpak v. Ramallo Brothers Printing, Inc.*, 125 DPR 724, 738 (1990).

### -*III*-

Tenemos ante nuestra consideración un recurso apelativo mediante el cual el señor Vargas Cruz impugna el dictamen del foro primario, que desestimó la demanda en su totalidad. Los cuatro (4) señalamientos de error planteados en el presente caso versan sobre la inconformidad del señor Vargas Cruz con la determinación del Tribunal de Primera Instancia al denegarle los remedios interdictales solicitados, declarar sin lugar su causa de acción por daños y perjuicios, e imponer el pago de honorarios de abogado por temeridad, así como los gastos y costas del pleito. Luego de examinar el expediente en su totalidad y tras entender que los errores esgrimidos se relacionan estrechamente, procederemos a discutirlos conjuntamente.

Primeramente, el apelante sostiene que el foro primario erró al desestimar la demanda en su totalidad. Expresó que, aunque el tribunal aceptó los hechos como bien alegados, concluyó incorrectamente que no eran suficientes para sostener una reclamación válida, en contravención de las Reglas de Procedimiento Civil y su interpretación jurisprudencial. No le asiste la razón. Veamos.

El 21 de octubre de 2024, la parte apelante instó una *Demanda* en contra de la parte apelada.[10] Alegó que conforme a los artículos 2.2, 5.1, 7.15 y 12.8 del Código Electoral,[11] las actuaciones de la parte apelada restringieron de manera injusta su exposición mediática y su participación en el proceso electoral. Sostuvo que esta conducta afectó el derecho de los electores a recibir información adecuada e infringió la obligación de garantizar un proceso justo y transparente. En consecuencia, planteó que dichas acciones vulneraron principios fundamentales de equidad electoral y transparencia, lo que menoscabó el acceso de la ciudadanía a información relevante para el ejercicio del voto. Por lo anterior, solicitó al TPI que como remedios interdictales: (i) ordenara a Jugando Pelota Dura a cesar y desistir de omitir o invisibilizar al apelante en su carácter de candidato independiente a la alcaldía de San Juan; y (ii) le requiriera coordinar la participación del apelante en el programa, otorgándole un tiempo igual al concedido a los demás candidatos. Asimismo, solicitó al foro primario, que impusiera a la parte apelada la obligación de resarcir pecuniariamente al apelante, por una suma no menor de un millón ($1,000,000.00) de dólares, en concepto de daños y perjuicios derivados de sus actuaciones culposas.

---

[10] Apéndice del recurso a las págs. 1-16.
[11] 16 LPRA secs. 4502, 4561, 4625 y 4808.

Debemos recordar que, según reseñamos en nuestra previa exposición doctrinal, conforme a la Regla 10.2 de Procedimiento Civil, una parte demandada puede solicitar la desestimación de una causa de acción presentada en su contra si, a la luz de las alegaciones de la demanda, resulta evidente que prosperará alguna de las defensas afirmativas que establece la misma regla. 32 LPRA Ap. V, R. 10.2. Esta moción se basará en al menos uno de los siguientes fundamentos: (1) la falta de jurisdicción sobre la materia o (2) la falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento (4) insuficiencia del emplazamiento del diligenciamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio, o (6) dejar de acumular una parte indispensable. *Íd.* En el caso ante nuestra consideración, la parte apelada presentó *Moción* mediante la cual solicitaron al foro primario que desestimara la *Demanda*. Argumentaron que la parte apelante no había formulado adecuadamente una reclamación que justificara la concesión de un remedio. Sostuvieron que, al tratarse de una entidad privada y no del Estado, no le resultaba aplicable la presunta violación la Ley Electoral o Constitucional. Además, señalaron que el apelante no había cumplido con los requisitos necesarios para la concesión de los remedios interdictales solicitados, y que el reclamo por daños y perjuicios, estimados en millones de dólares, carecía de fundamento por basarse en una proyección especulativa que pretendía imponer una censura previa.

Debemos puntualizar que, al considerarse una moción de desestimación al amparo de esta regla, los tribunales tienen que tomar como cierto y de la forma más favorable para la parte demandante todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 84 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384, 396 (2022).

Cónsono con lo anterior, los foros adjudicativos tienen el deber de interpretar las alegaciones de una demanda de manera conjunta y liberalmente a favor de la parte demandante. *Eagle Security v. Efrón Dorado et al.*, supra, pág. 84; *González Méndez v. Acción Social et al.*, 196 DPR 213, 234 (2016).

En razón de ello, para que prevalezca una solicitud de desestimación al amparo de la referida Regla 10.2 de Procedimiento Civil, el tribunal debe convencerse con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015).

A la luz de lo anterior, en el caso ante nuestra consideración, el Tribunal de Primera Instancia actuó conforme a derecho al evaluar la moción de desestimación y aplicar correctamente el estándar procesal correspondiente. Al encontrarse ante una moción de desestimación, tomó como ciertos todos los hechos bien alegados en la demanda, excluyendo las alegaciones concluyentes, conclusiones de derecho y los hechos alegados de forma generalizada. Luego de este análisis, determinó que, de las alegaciones de la parte apelante, no surgía una causa de acción que justificara la concesión de un remedio. La parte apelante plantea que las actuaciones de la parte apelada restringieron de manera injusta su exposición mediática y su participación en el proceso electoral. Esta conducta, según adujo, afectó el derecho de los electores a recibir información adecuada. Sin embargo, estas alegaciones no logran establecer de manera clara y concreta como las actuaciones de la parte apelada configuran una vulneración real de sus derechos ni como estos pueden dar paso a la concesión de un remedio judicial. En consecuencia, aun interpretando la demanda lo más liberalmente a su favor, el apelante no tiene

derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación. Es decir, de los hechos alegados por el apelante, no surge una causa de acción que justifique la concesión de un remedio. Concluimos que el foro primario resolvió correctamente al acoger la moción de desestimación, en estricto cumplimiento con el marco normativo vigente y la jurisprudencia aplicable.

Por otro lado, el apelante sostiene que el foro primario erró al denegarle los remedios interdictales solicitados, al concluir que no cumplía con los criterios para la concesión de órdenes de entredicho provisional, interdicto preliminar e interdicto permanente. Alega que el tribunal de primera instancia se limitó indebidamente en la aplicación de principios legales y de equidad, al determinar que la parte apelada, compuesta por una persona natural y una entidad privada, no podía ser objeto de censura previa ni de restricciones que coarten su derecho a la libertad de expresión. Afirmó que dicha determinación resultó contraria a la legislación y reglamentación aplicable al recurso extraordinario del *injuction*. Asimismo, argumenta que la negativa a reconocer su causa de acción por daños y perjuicios constituyó un apartamiento de la legislación civil y corporativa, así como de la casuística interpretativa que rige este tipo de controversias. No le asiste la razón.

Como establecimos en nuestra previa exposición doctrinal, el recurso del *injuction* se utiliza para prohibir u ordenar la ejecución de determinado acto con el fin de evitar daños irreparables a alguna persona, en aquellos casos en que no existe otro remedio adecuado en ley para obtener ese resultado. *Senado de Puerto Rico v. Gobierno de Puerto Rico*, 203 DPR 62, 71 (2019); *E.L.A. v. Asociación de Auditores*, 147 DPR 669, 679 (1999). Además, el Tribunal Supremo de Puerto Rico ha reconocido que el *injunction* solo procede de clara necesidad y solamente ante una demostración de indudable e

intensa violación de un derecho. *APPR v. Tribunal Superior*, 103 DPR 903, 906 (1995). Enfatizamos en que, la decisión del tribunal de instancia para conceder o denegar la orden de *injunction* no será revocada en apelación a menos que se demuestre que dicho foro abusó de su facultad discrecional. *ELA v. Asoc. de Auditores*, supra, pág. 680.

Según surge del expediente, mediante la petición de un *injunction*, el señor Vargas Cruz solicitó al TPI que ordenara a Jugando Pelota Dura a cesar y desistir de omitirlo o invisibilizarlo en su carácter de candidato independiente a la alcaldía de San Juan. Además, requirió que se le garantizara participación en el programa, otorgándole un tiempo igual al concedido a los demás candidatos.

Es menester destacar que la libertad de palabra y de prensa es un derecho fundamental. *Méndez Arocho v. El Vocero*, 130 DPR 867 (1992). Ese derecho emana de la Sec. 4, Art. II, de la Constitución de Puerto Rico y de la Primera Enmienda de la Constitución de los Estados Unidos de América. Su esencia estriba en impedir la restricción arbitraria del contenido de publicaciones, así como el medio, lugar y manera en que se realicen, no importa su veracidad, popularidad o simpatía. *Pérez v. Vda. de Criado*, 151 DPR 355 (2000). Los derechos de libertad de expresión y de prensa protegen tanto el contenido del mensaje como el medio y el lugar donde se ejercita. *Coss v. C.E.E.*, 137 DPR 877 (1995). Cónsono con lo anterior, se ha resuelto también que el ejercicio de la libertad de palabra y de prensa no depende de que lo que se diga o publique sea cierto. *Aponte Martínez v. Lugo*, 100 DPR 282, 286 (1971). Según explicamos, el Tribunal Supremo federal ha rechazado y desacreditado las tentativas de censura previa, especialmente las que, como en el caso de autos, se han pretendido llevar a cabo mediante *injunctions*. *Aponte Martínez v. Lugo*, supra, pág. 285. Bajo el crisol doctrinario, toda tentativa de censura previa llega al

Tribunal acompañada de una fuerte presunción de inconstitucionalidad. *Aponte Martínez v. Lugo,* supra, pág. 288. Sin embargo, el Tribunal Supremo reconoce que solo en tres circunstancias específicas los tribunales han permitido que se prohíba la publicación de determinada información. Dichas circunstancias son: (1) cuando una nación está en guerra; (2) cuando se trata de publicaciones obscenas; y (3) cuando se trata de exhortaciones a actos de violencia y al derrocamiento por la fuerza del gobierno ordenado. *Pérez Vda. Muñiz v. Criado,* supra, págs. 369-370.

Del análisis de los autos se desprende que el apelante pretendía que el Tribunal de Primera Instancia impusiera restricciones arbitrarias sobre el contenido, el medio, el lugar y la forma en que se transmiten las noticias en un programa televisivo. No obstante, acceder a tal solicitud resultaría contrario a derecho, pues constituiría una actuación inconstitucional que menoscabaría las garantías de libertad de expresión y de prensa. No nos encontramos ante una circunstancia que justifique la prohibición de una publicación específica, sino ante un claro intento de censura previa. La protección constitucional de estos derechos salvaguarda tanto el contenido del mensaje de la parte apelada como el medio y el foro en que este se difunde, sin que la veracidad de la información publicada constituya un requisito para su ejercicio. Nuestra evaluación del expediente nos lleva a concluir que, en ausencia de un claro abuso de discreción, no encontramos fundamento alguno para revocar la determinación del tribunal de instancia en cuanto a su decisión de denegar el auto de *injunction* provisional y permanente solicitado por el apelante.

Por otro lado, el Tribunal Supremo de Puerto Rico ha establecido que una persona podrá reclamar un daño sufrido por la culpa o negligencia de otra persona cuando concurren tres (3)

requisitos: (1) un acto u omisión culposa o negligente; (2) una relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) un daño real causado al reclamante. *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010). En el caso ante nuestra consideración, el señor Vargas Cruz, alega que Jugando Pelota Dura "mutiló" las encuestas y no le incluyó en los análisis que se llevaron a cabo en el programa. Sin embargo, del examen de los autos no surge evidencia de que dicha omisión le haya causado un daño real ni que exista relación causal entre la actuación de la parte apelada y el daño reclamado. El apelante fundamenta su reclamación en que Jugando Pelota Dura le impidió participar libremente en la competencia electoral. No obstante, como se discutió anteriormente, los actos imputados a la parte apelada no constituyen actuaciones culposas pues están protegidas por los derechos constitucionales de libertad de expresión y de prensa.

Por último, en el recurso apelativo ante nuestra consideración, el apelante sostiene que el foro de instancia erró al imponerle el pago de honorarios de abogado, por temeridad, y de los gastos y las costas del pleito, porque alega que no fue afín con las Reglas de Procedimiento Civil y su jurisprudencia interpretativa.

Cónsono con lo anterior, el concepto de temeridad se define como aquella conducta que provoca innecesariamente un pleito, prolonga un litigio que pudo haberse evitado o impone a la otra parte la realización de gestiones superfluas. *Blas v. Hosp Guadalupe,* supra*,* págs. 334-335. En otras palabras, la temeridad constituye una actitud que incide directamente en el procedimiento y afecta el buen funcionamiento y administración de la justicia. *Fernández v. San Juan Co. Inc.*, supra, pág. 718. En atención a ello, el propósito de la imposición de honorarios de abogado en casos de temeridad es establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una postura

carente de fundamentos, obliga injustificadamente a la otra parte a asumir las molestias, los gastos, el trabajo y las inconveniencias de un pleito. *Íd.* Asimismo, el Tribunal ha reconocido que esta sanción no solo tiene un efecto punitivo, sino que también persigue desalentar la litigación frívola. *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 505 (2010).

Según explicamos anteriormente, el Tribunal Supremo de Puerto Rico ha establecido que la imposición de honorarios de abogado es discrecional, pero la referida Regla 44.1(d) de Procedimiento Civil es clara en el sentido de que cuando una parte ha procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado. *Fernández Marino v. San Juan Cement Co., Inc.*, 118 DPR 713, 717 (1987). Es decir, determinada la existencia de temeridad, la condena de honorarios es imperativa. *Blas v. Hosp Guadalupe*, 146 DPR 267, 334 (1998).

En el caso ante nuestra consideración, el Tribunal de Primera Instancia, en el ejercicio de su discreción, determinó que, tras un análisis minucioso de las alegaciones y fundamentos presentados, la parte apelante incurrió en temeridad al presentar la demanda. Señaló que la demanda constituía un ejemplo de litigación frívola, ya que pretendía adjudicar responsabilidades sin una base discutible de hecho o derecho. Determinó que un análisis objetivo, basado en las fuentes de derecho aplicables a la libertad de expresión y de prensa, habría evitado la presentación del pleito. Incluso, del expediente ante nos se desprende que el día de la celebración de la vista, el TPI promovió que las partes llegaran a un acuerdo, sin embargo, el señor Vargas Cruz no accedió. Huelga decir que, juzgamos que en este caso se le impuso a la parte apelada el peso de enfrentar un litigio innecesario, con los consecuentes

gastos, molestias e inconvenientes, lo que ameritó la imposición de honorarios de abogado.

Por lo que, tomando en consideración lo antes mencionado, entendemos que el TPI no abusó de su discreción al imponer tres mil ($3,000.00) dólares, por concepto de honorarios de abogado por temeridad, así como el pago de los gastos y las costas del litigio a la parte apelante.

IV

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, se confirma la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones