ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| FÉLIX NORMAN ROMÁN NEGRÓN, CRISELID JOANNA RIVERA MUÑOZ y La Sociedad Legal de Bienes Gananciales compuesta por ambos<br><br>Parte Apelante<br><br>v.<br><br>ASOCIACIÓN DE RESIDENTES CALLE PATRICIA Y UNO (1), INC; LUIS ALBERTO ÁLVAREZ ESTRADA, su esposa FULANA DE TAL y La Sociedad Legal de Bienes Gananciales compuesta por ambos; RICARDO MIGUEL PÉREZ ALO, LUZ ENEIDA FELICIANO CASTRO y La Sociedad Legal de Bienes Gananciales compuesta por ambos; FERNANDO JOSÉ DEL LLANO SOBRINO, su esposa CRISTINA ALEXANDRA FERNÁNDEZ RODRÍGUEZ y La Sociedad Legal de Bienes Gananciales compuesta por ambos; CHUBB INSURANCE COMPANY OF PUERTO RICO<br><br>Parte Apelada | TA2025AP00544 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br><br>Caso Núm.: BY2025CV05160<br><br><br><br>Sala: 503<br><br><br><br>Sobre:<br>*Injunction* preliminar y permanente |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Grana Martínez[1].

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de diciembre de 2025.

Compareció ante este Tribunal la parte apelante, Félix Norman Román Negrón, Criselid Joanna Rivera Muñoz y la Sociedad Legal de

---

[1]De conformidad con la OATA-2025-228, emitida el 18 de noviembre de 2025, se designó a la Hon. Grace M. Grana Martínez en sustitución de la Hon. Annette M. Prats Palerm.

Bienes Gananciales compuesta por ambos (en adelante, "matrimonio Román Rivera" o "Apelantes"), mediante recurso de apelación presentado el 13 de noviembre de 2025. Nos solicitó la revocación de la *Sentencia Enmendada* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "TPI"), el 15 de octubre de 2025, notificada y archivada en autos al día siguiente. Mediante el aludido dictamen, el foro de instancia desestimó la causa de acción incoada por el matrimonio Román Rivera y les impuso una sanción de $6,500.00 por concepto de temeridad.

Por los fundamentos que expondremos a continuación, se *modifica* la *Sentencia* apelada y así modificada, se *confirma.*

**I.**

El presente caso tuvo su origen con la presentación de una "**Demanda**" por parte de los Apelantes en contra de la Asociación de Residentes Calle Patricia y Uno (en adelante, "Asociación de Residentes"), el Sr. Luis Alberto Álvarez Estrada, su esposa Fulana de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos, el Sr. Ricardo Miguel Pérez Alo, la Sra. Luz Eneida Feliciano Castro y la Sociedad Legal de Bienes Gananciales compuesta por ambos, el Sr. Fernando José del Llano Sobrino, su esposa Cristina Alexandra Fernández Rodríguez y la Sociedad Legal de Bienes Gananciales compuesta por ambos, y Chubb Insurance Company of Puerto Rico (en adelante, "Chubb"). Mediante la misma, el matrimonio Román Rivera alegó que eran dueños y residentes de cierto inmueble ubicado en la Urbanización Susan Court #1 y que dicha propiedad quedó afectada por una serie de condiciones restrictivas de uso y disposición que constituían una servidumbre en equidad.

Añadieron que la Asociación de Residentes adoptó un reglamento que tuvo el efecto de enmendar las aludidas condiciones restrictivas en la urbanización. Asimismo, alegaron que el referido reglamento le limitaba el acceso vehicular a su residencia, le imponía restricciones y limitaciones de uso y disposición de su residencia. En vista de lo anterior, expusieron que el reglamento era nulo, pues los propietarios de la Calle 1 de la

Urbanización Tintillo Gardens no tenían legitimación alguna para imponer condiciones, limitaciones o restricciones a los propietarios de la Calle Patricia en la Urbanización Susan Court respecto al uso y disposición de sus propiedades.

Por otro lado, esbozó el matrimonio Román Rivera que los directivos de la Asociación de Residentes estaban realizando modificaciones al diseño del sistema de control de acceso vehicular en la Avenida Wall, vía que constituye la entrada principal a la Calle Patricia en la Urbanización Susan Court, lugar de su residencia. Con relación a ello, explicaron que el portón vehicular instalado en la Calle Patricia fue autorizado por la Asamblea Municipal de Bayamón mediante la Ordenanza Núm. 20, aprobada bajo el Proyecto de Ordenanza Núm. 56, Serie 1992–1993. Además, que dicha medida reconoce expresamente el derecho de los residentes de la Urbanización Susan Court a controlar el acceso vehicular a su calle y el cierre de la Urbanización, sin subordinación alguna a residentes de la Urbanización Tintillo Gardens.

Asimismo, aludieron a que ni ellos, ni el restante de los residentes y titulares de la Calle Patricia Núm. 1 podían entrar y salir de la Urbanización Susan Court por el portón de la Calle (Avenida) Wall con un sistema de *beeper*. De igual forma, sostuvieron que sus visitas o servicios no tenían acceso por un intercomunicador con la entrada, debido a que los directivos de la Asociación de Residentes no habían permitido que los vecinos, residentes y propietarios de la Urbanización Susan Court instalaran su intercomunicador con la entrada, conforme a la Ordenanza Municipal Núm. 20, Serie 1992-93.

Además, expresaron que los directivos de la Asociación de Residentes le habían impuesto a los vecinos, residentes y propietarios de la Urbanización Susan Court la cuota establecida de $20.00 mensuales por el Municipio de Guaynabo por el cierre en la Calle 1 de la Urb. Tintillo Gardens, conforme al Dictamen Preliminar del Gobierno Municipal de Guaynabo de 21 de julio de 1992 sobre el control de acceso. A esos efectos, argumentaron que la Asociación de Residentes no podía imponer,

ni cobrar cuotas a los residentes de la Urbanización Susan Court si éstos no formaban parte de su organización ni están obligados por algún acuerdo, escritura o reglamento legalmente vinculante.

Expresaron que la Urbanización Susan Court es una finca independiente a la Calle 1 de la finca de la Urbanización Tintillo Gardens y que los directivos de la Asociación de Residentes, de forma intencional y deliberada, han difundido comunicaciones a los residentes en la Calle 1 y la Calle Patricia con el propósito de menoscabar la imagen y la reputación de los Apelantes. En virtud de lo anterior, solicitaron la expedición de un *injunction* preliminar y permanente para que se les ordenara a la Asociación de Residentes a cesar y desistir de todo y cualquier acto dirigido a imponer obligaciones, cargas, gravámenes o restricciones sobre la propiedad del matrimonio Román Rivera. Además, peticionaron que se decretara la nulidad del reglamento presuntamente adoptado por la Asociación de Residentes y, por tanto, que cualquier pago pasado, presente y futuro de las cuotas de mantenimiento, correspondientes a la Urbanización Susan Court fuera entregado por los directivos de la Asociación de Residentes a la Asociación de los Residentes de la Urbanización Susan Court que en su día se constituya. Finalmente, solicitaron una compensación de $50,000.00 por los daños, sufrimientos y angustias mentales que han atravesado como resultado de las actuaciones de la Asociación de Residentes.

El 7 de octubre de 2025, Chubb presentó "**Moción Solicitando Desestimación bajo la Regla 10.2**" mediante la cual alegó que procedía desestimar el caso, toda vez que conforme a lo resuelto en Guerrido García v. U.C.B., 143 DPR 337 (1997), no se le concede al matrimonio Román Rivera una causa de acción bajo los términos de una póliza de directores y oficiales. Tras la oposición presentada por los Apelantes, el TPI emitió *Resolución Interlocutoria* por medio de la cual declaró "No Ha Lugar" la solicitud desestimatoria de Chubb.

Así las cosas, el 8 de octubre de 2025, la Asociación de Residentes presentó "**Moción Solicitando Desestimación**". Sostuvo que existe un pleito incoado en el caso núm. GB2023CV00532 (en adelante, "Caso

paralelo") para el cobro de cierta deuda de cuotas en el que las defensas y argumentos presentados por el matrimonio Román Rivera son exactamente los mismos que se presentan en el caso de epígrafe. Asimismo, arguyó que el remedio del interdicto preliminar y permanente no era el idóneo para reclamar lo peticionado en la "**Demanda**".

Ese mismo día, Luis Alberto Álvarez Estrada, Fernando José del Llano Sobrino, Ricardo Miguel Pérez Alo, sus esposas, Vanessa Campos, Cristina Alexandra Fernández Rodríguez y Luz Eneida Feliciano Castro, así como sus respectivas Sociedades Gananciales, presentaron una "**Moción de Desestimación Parcial**". En ella, aludieron a que en la "**Demanda**" no se efectuaron alegaciones específicas en su contra que justificaran la concesión de un remedio y solicitaron la imposición de honorarios por temeridad.

Al día siguiente, el matrimonio Román Rivera presentó una "**Oposición a Moción Solicitando Desestimación**" mediante la cual expusieron que el pleito de autos no perseguía litigar un cobro de dinero ni una duplicidad de controversia, sino el reconocimiento y protección de derechos reales derivados de la servidumbre en equidad constituida mediante la escritura pública y la declaración de nulidad de reglamentos privados y de las actuaciones de la Junta de Directores de la Asociación de Residentes que contravienen tales condiciones. Por tanto, peticionó que se denegara la solicitud de desestimación presentada por la Asociación de Residentes. En lo correspondiente a la solicitud de desestimación parcial presentada, los Apelantes expresaron que las actuaciones de la Asociación de Residentes fueron llevadas a cabo por sus directivos y que las mismas son violatorias de sus derechos propietarios, por lo que procedía denegar el remedio solicitado en su contra.

Evaluados los planteamientos de las partes, el 15 de agosto de 2025, el TPI emitió una *Sentencia Enmendada* mediante la cual concluyó que no existía razón para conceder el remedio extraordinario del *injunction* preliminar y tampoco para continuar el pleito, puesto que es en el Caso paralelo se invocaron todos los argumentos esgrimidos en el caso que nos

ocupa. Fundamentó su determinación en que en dicho caso la controversia era muy similar al presente y que al menos una de las defensas invocadas por el matrimonio Román Rivera era idéntica a una de las reclamaciones que se presentaban en este litigio. En vista de lo anterior, determinó que los Apelantes fueron temerarios en la presentación de la "**Demanda**" y que, aun cuando no se hubiera desestimado la misma, tampoco procedía el remedio del interdicto preliminar solicitado. Por tanto, desestimó las causas de acción presentadas por el matrimonio Román Rivera y les impuso el pago de $6,500.00, por concepto de honorarios de abogado por temeridad.

Insatisfechos, el matrimonio Román Rivera presentó el recurso que nos ocupa mediante el cual le imputó al foro apelado la comisión de los siguientes errores:

> **PRIMER ERROR SEÑALADO: ERR[Ó] Y ABUS[Ó] DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR SIN PERJUICIO LA DEMANDA DE AUTOS AL AMPARO DE LA REGLA 10.2 DE LAS DE PROCEDIMENTO CIVIL.**

> **SEGUNDO ERROR SEÑALADO: ERR[Ó] Y ABUS[Ó] DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL DISPONER DE LA DEMANDA MEDIANTE UNA DESESTIMACI[Ó]N QUE NO PROCED[Í]A EN DERECHO.**

> **TERCER ERROR SEÑALADO: ERR[Ó] Y ABUS[Ó] DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR SIN PERJUICIO LA DEMANDA DE INJUNCTION DEBIDO A QUE LA MISMA ES SUSCEPTIBLE DE ENMIENDA.**

> **CUARTO ERROR SEÑALADO: ERR[Ó] Y ABUS[Ó] DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER LA CANTIDAD DE $6,500.00 DE SANCIÓN POR ALEGADA TEMERIDAD.**

El 1 de diciembre de 2025, comparecieron los señores Luis Alberto Álvarez Estrada, Fernando José de Llano Sobrino, Ricardo Miguel Pérez Alo, sus esposas, Vanessa Montes, Cristina Alexandra Fernández Rodríguez y Luz Eneida Feliciano Castro, respectivamente, así como sus respectivas Sociedades Legales de Gananciales compuestas por éstos, mediante "**Oposición a Recurso de Apelación**". Por su parte, el 2 de diciembre de 2025, compareció Chubb por medio de un escrito intitulado "**Alegato en Oposición**". Mientras que el 3 de diciembre de 2025, la

Asociación de Residentes presentó "**Alegato en Oposición a la Apelación**".

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**A.**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, y su jurisprudencia interpretativa le confiere al demandado la oportunidad de presentar cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) que las alegaciones del demandante dejan de exponer una reclamación que justifique la concesión de un remedio; y (6) la falta de una parte indispensable. Comisión v. González Freyre *et al*, 211 DPR 579 (2023).

La moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra*, es una defensa que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra. Aut. Tierras v. Moreno & Ruiz Dev. Corp., 174 DPR 409, 428 (2008); Colón v. Lotería, 167 DPR 625, 649 (2006). En general, la Regla 10.2 de Procedimiento Civil, *supra*, recoge defensas que pueden plantearse, a opción del demandado, en una moción de desestimación antes de contestar o en la misma contestación a la demanda. Casillas Carrasquillo v. ELA, 209 DPR 240, 247 (2022).

De igual forma, nuestro más alto foro ha establecido que:

> [A] los fines de disponer de una moción de desestimación, estamos obligados a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. Para prevalecer, el promovente de la moción tiene que demostrar que, aun así, la demanda no expone una reclamación que justifique la concesión de un remedio. Esta doctrina se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas. Pressure Vessels PR v. Empire Gas PR, 137 DPR 497, 505 (1994).

Sobre este asunto, el Dr. José Cuevas Segarra expone que "[e]n la moción de desestima[ción] no se trata de poner en duda los hechos alegados en la demanda, sino atacarla por un vicio intrínseco, por ejemplo: insuficiencia, ausencia de parte indispensable, [o] falta de jurisdicción". J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Publicaciones JTS, San Juan, Tomo I, 2000, pág. 275.

En fin, "la demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación". Pressure Vessels PR. v. Empire Gas P.R., *supra*, pág. 505. Consecuentemente, se debe considerar si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida. El Día, Inc. v. Mun. de Guaynabo, 187 DPR 811, 821 (2013); Consejo Titulares v. Gómez Estremera, 184 DPR 407, 423 (2012).

Relacionado con lo anterior, la jurisprudencia ha identificado casos que contienen elementos subjetivos, de intención, propósitos mentales o negligencia. A saber, "controversias en las que el factor credibilidad juega un papel esencial, si no decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo". Rosario Ortiz v. Nationwide Mutual Insurance Co., 158 DPR 775, 780-81 (2003). A esos efectos, "la privación a un litigante de su 'día en corte' es una medida procedente sólo en casos extremos y que debe usarse solamente en casos claros". Íd*.,* pág. 780.

**B.**

La Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, y los Arts. 675 al 678 y 686-687 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3421 al 3424 y 3532a, respectivamente, regulan el recurso de *injunction* o interdicto. Adoptado del sistema de equidad inglés, este recurso extraordinario se utiliza para prohibir u ordenar la ejecución de determinado acto con el fin de evitar causar perjuicios inminentes o daños irreparables a alguna persona, en aquellos casos en que no hay otro remedio adecuado

en ley para obtener ese resultado. <u>Senado de Puerto Rico v. Gobierno de Puerto Rico</u>, 203 DPR 62, 71 (2019); <u>E.L.A. v. Asociación de Auditores</u>, 147 DPR 669, 679 (1999). Nuestro ordenamiento jurídico reconoce tres (3) modalidades de *injunction*, éstos son: el *injunction* permanente, *injunction* preliminar y el entredicho provisional.

El Tribunal Supremo reiteradamente ha señalado que los tribunales antes de expedir un *injunction*, ya sea preliminar o permanente, deben considerar si existe algún otro remedio eficaz, completo y adecuado en ley. De ser así, entonces no se considerará el daño como irreparable. <u>Pérez Vda. Muñiz v. Criado</u>, 151 DPR 355, 372 (2000). En consonancia con lo anterior, se ha establecido que se estiman como remedios legales adecuados aquellos que pueden otorgarse en una acción por daños y perjuicios, en una criminal o cualquiera otra disponible. <u>Misión Industrial v. J.P. y A.A.A.</u>, 142 DPR 656, 681 (1997).

El daño irreparable que justifica la expedición de este remedio extraordinario del *injunction* es aquel que no puede ser remediado mediante la utilización de otros medios legales disponibles y que no puede ser apreciado con certeza, ni debidamente compensado por cualquier indemnización que pudiera recobrarse en un pleito ordinario. Es por ello que, como recurso extraordinario, su concesión recae en la entera discreción del juez. <u>Pérez Vda. de Muñiz v. Criado Amunategui</u>, 151 DPR 355, 372 (2000).

Por su parte, el *injunction* preliminar se emite en cualquier momento antes del juicio en su fondo. En la mayoría de los casos, se solicita junto a la presentación del pleito y, en caso de urgencia, se le solicita al tribunal el señalamiento de una vista para discutir los méritos de dicha petición. D. Rivé Rivera, <u>Recursos Extraordinarios</u>, 2da ed. rev., Programa de Educación Jurídica Continuada, Facultad de Derecho Universidad Interamericana de Puerto Rico, 1996, San Juan, pág. 21. El propósito de este recuso es mantener el *estatus quo* hasta que se celebre el juicio en sus méritos para que así no se produzca una situación que convierta en académica la sentencia que finalmente se dicte al atender la petición de

*injunction permanente* o se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. VDE Corp. v. F&R Contractors, 180 DPR 21, 41 (2010); Rullán v. Fas Alzamora, 166 DPR 742, 764 (2006). Para poder expedir este tipo de remedio, el tribunal debe citar a una vista, previa notificación y su vigencia será efectiva desde el momento en que se notifica hasta que se decida, mediante sentencia, la permanencia o no de la solicitud.

Al momento de la expedición del *injunction* preliminar, el tribunal tomará en consideración cualquier cambio en las circunstancias presentes al momento en que se hizo la solicitud y aquéllas que prevalecen al momento en que se va a dictar la orden. Trigo Hnos. v. Sobrino Izquierdo, 72 DPR 449, 465 (1951); Las Monjas Racing Corp. v. Comisión Hípica, 57 DPR 522, 524 (1940). Ahora bien, en los casos en que se solicite un *injunction* preliminar y permanente, el tribunal está facultado para consolidar ambas vistas, sin que las partes tengan que presentar evidencia nuevamente. La emisión de una orden de *injunction* preliminar no necesariamente ata al tribunal a la hora de evaluar la expedición del interdicto permanente. Mun. De Loíza v. Sucn. Marcial Suárez, 154 DPR 333, 367 (2001).

De otra parte, al igual que en un *injunction* preliminar, el tribunal antes de emitir un interdicto permanente deberá celebrar una vista en sus méritos. Le corresponderá evaluar los siguientes criterios: (1) si el demandante ha prevalecido o puede prevalecer en un juicio en sus méritos; (2) si el demandante tiene algún otro remedio adecuado en ley o si el *injunction* es el único recurso disponible para vindicar su derecho; (3) el interés público presente o afectado por el pleito; y (4) el balance de equidades entre todas las partes en litigio. Senado de Puerto Rico v. Gobierno de Puerto Rico, *supra*, pág. 72. Este es un remedio interdictal que se produce mediante una sentencia final.

Mientras, el auto de entredicho provisional es un remedio de carácter interlocutorio que persigue mantener el *estatus quo* hasta tanto el tribunal adjudique la procedencia de una solicitud de *injunction* preliminar. Al ser

expedido sin notificación previa al demandado y sin oportunidad para ser oído, la petición ha de ser juramentada o estar acompañada de declaración jurada y de ella deben surgir los motivos que justifican su concesión debido a que se causarán daños, perjuicios o pérdidas irreparables al peticionario antes de notificar y escuchar al demandado. Además, el solicitante está en la obligación de certificar al tribunal las diligencias efectuadas para notificar a la parte adversa, si alguna, o las razones por las que entiende no procede la notificación previa. 32 LPRA Ap. V R. 57.1.

La orden de entredicho provisional que emita el tribunal debe cumplir con los requisitos de la Regla 57.4 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 57.4. Éstos son: (1) ser preciso en cuanto a lo que se prohíbe o exige hacer; (2) detallar por qué el daño es inminente, inmediato e irreparable; (3) explicar por qué se emitió sin notificación previa; e (4) incluir la cuantía de la fianza que se le requirió al demandante para que pueda responder por daños y costas en caso de que se haya expedido indebidamente. El Tribunal Supremo de Puerto Rico ha insistido en que antes de expedir el *injunction*, ya sea preliminar o permanente, los tribunales deben considerar la existencia de algún otro remedio eficaz, completo y adecuado en ley. De existir, entonces no se considerará el daño como irreparable. Pérez Vda. Muñiz v. Criado, *supra*, pág. 372 (2000); A.P.P.R. v. Tribunal Superior, 103 DPR 903, 908 (1975).

### C.

En nuestro ordenamiento, la imposición de honorarios de abogado únicamente procede en derecho cuando una parte ha actuado con temeridad o frivolidad. Torres Vélez v. Soto Hernández, 189 DPR 972, 993 (2013) (citando a Santiago v. Sup. Grande, 166 DPR 796, 820 (2006)). Cónsono con esta norma, la Regla 44.1 (d) de Procedimiento Civil establece, en lo pertinente, que "[e]n caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta…".32 LPRA Ap. V.

A pesar de que la citada Regla no define en qué consiste una conducta temeraria, la jurisprudencia la ha descrito como "aquellas actuaciones de un litigante que lleven a un pleito que pudo evitarse, que provoquen la prolongación indebida del trámite judicial o que obliguen a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos". SGL González-Figueroa v. SLG *et al.*, 209 DPR 138, 148 (2022). Así, la penalidad que se impone por conducta temeraria tiene por fin "disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte". Marrero Rosado v. Marrero Rosado, 178 DPR 476, 505 (2010).

También se ha indicado que el propósito de la imposición de honorarios por temeridad es penalizar a la parte que por su "terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito". C.O.P.R. v. S.P.U., 181 DPR 299, 342 (2011)[2]; Torres Vélez v. Soto Hernández, *supra*. Es decir, que es temerario quien torna necesario un pleito frívolo, o provoca su indebida prolongación, obligando a la otra a incurrir en gastos innecesarios. Martínez Maldonado v. Cons. Seguridad Urb. Villamar, 214 DPR ___ (2024); 2024 TSPR 125 Colón Santos v. Coop. Seg. Mult. P.R., 173 DPR 170, 188 (2008); P.R. Oil v. Dayco, 164 DPR 486, 511 (2005); Domínguez v. GA Life, 157 DPR 690, 706 (2002).

La determinación de si una parte obró con temeridad descansa en la sana discreción del juzgador. SGL González-Figueroa v. SLG *et al.*, *supra*, pág. 151.[3] Determinada la existencia de temeridad, el tribunal deberá tomar en cuenta una serie de factores para poder calcular la cantidad que concederá, a saber: "(1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada,

---

[2] Citando a S.L.G. Flores-Jiménez v. Colberg, 173 DPR 843, 866 (2008).
[3] *Véase, además*, C.O.P.R. v. S.P.U., *supra*; P.R. Oil v. Dayco, *supra*, pág. 511; Torres Vélez v. Soto Hernández, *supra*.

y (5) el nivel profesional de los abogados". <u>C.O.P.R. v. S.P.U.</u>, *supra*. La cantidad concedida en honorarios de abogado al amparo de la Regla 44.1 de Procedimiento Civil, *supra*, no necesariamente tiene que ser equivalente al valor de los servicios legales prestados, sino a "aquella suma que en consideración al grado de temeridad y demás circunstancias el tribunal concluye que representa razonablemente el valor de esos servicios". <u>Santos Bermúdez v. Texaco P.R., Inc.</u>, 123 DPR 351, 357 (1989).

**III.**

En el presente caso, los Apelantes nos solicitaron la revocación de la *Sentencia Enmendada* del TPI en la que se declaró "Ha Lugar" la "**Moción Solicitando Desestimación**" presentada por la Asociación de Residentes y la "**Moción de Desestimación Parcial**" presentada por los miembros de la Junta Directiva de dicha asociación.

Los primeros tres señalamientos de error esgrimidos están íntimamente relacionados, por lo que se tratarán de forma conjunta en la discusión. En síntesis, los Apelantes sostienen que el foro de instancia erró al desestimar, sin perjuicio, la "**Demanda**" al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, y al desestimar la causa de acción de *injunction* debido a que la referida "**Demanda**" es susceptible de enmienda. No les asiste la razón. Veamos.

Del expediente ante nuestra consideración se desprende que el 20 de junio de 2023 la Asociación de Residentes presentó una "**Demanda**" en el Caso paralelo en contra de los Apelantes por presuntamente éstos adeudarle la suma de $6,250.00, por concepto de cuotas de mantenimiento de determinado inmueble ubicado en el Municipio de Guaynabo. Como consecuencia de ello, en su alegación responsiva, los Apelantes sostuvieron afirmativamente e invocaron como defensa que el cierre de la urbanización Susan Court fue realizado de manera ilegal y/o contrario a derecho.

Asimismo, de los autos electrónicos de dicho caso surge claramente que como parte de las controversias que presentaron los Apelantes en el *Informe de Conferencia con Antelación al Juicio* aprobado por el TPI y que

será materia de prueba en el juicio en su fondo ya pautado figura la legitimación que ostenta la Asociación de Residentes para imponer y cobrar cuotas a los residentes de la Calle Patricia en la Urb. Susan Court si éstos no forman parte de su organización ni están obligados por algún acuerdo, escritura o reglamento legalmente vinculante, toda vez que el cierre de la Urb. Susan Court, donde ellos residen, fue realizado de manera ilegal y/o contrario a derecho, por ende, la alegada deuda reclamada era igualmente ilegal. **En otras palabras, en el Caso paralelo el foro de instancia deberá resolver si el control de acceso que presuntamente afecta a los Apelantes y al restante de los residentes de la Urb. Susan Court es o no ilegal para poder entonces determinar si la Asociación de Residentes tiene o legitimación activa para cobrar la deuda en controversia en dicho pleito**.

Asimismo, surge del expediente que dos (2) años después de haber sido presentada la mencionada reclamación, los Apelantes presentaron una "**Demanda**" en contra de la Asociación de Residentes y de los miembros de la Junta Directiva de dicha Asociación en su carácter personal alegando que existen restricciones voluntarias que afectan la referida propiedad y que, a su vez, impiden que se realicen modificaciones al diseño del sistema de control de acceso vehicular en la Avenida Wall. Específicamente, indicaron que los Apelados no poseían la facultad legal de implementar un sistema de sellos vehiculares para el control de acceso automatizado de dicha avenida, pues su autoridad en ley le era extensiva a la Urbanización Tintillo Gardens únicamente y no a la Urbanización Susan Court #1.

Conforme adelantáramos en los acápites anteriores, la Regla 10.2 de Procedimiento Civil, *supra*, le permite al demandado solicitar la desestimación de la causa de acción instada en su contra, bajo el fundamento de que las alegaciones del demandante dejan de exponer una reclamación que justifique la concesión de un remedio. Ante una moción de esta naturaleza, el tribunal está obligado a tomar como ciertos todos los hechos bien alegados en la demanda y a interpretarlos de la manera más

favorable para el demandante. <u>Comisión v. González Freyre *et al.*</u>, *supra*, págs. 614-615. Igualmente, debe conceder el beneficio de todas las inferencias posibles que puedan derivarse de los hechos debidamente presentados en la demanda. <u>Montañez v. Hosp. Metropolitano</u>, *supra*, pág. 105.

Tras un análisis ponderado y comprensivo del expediente ante nuestra consideración, incluyendo la "**Demanda**", la "**Moción Solicitando Desestimación**", la "**Moción de Desestimación Parcial**", sus correspondientes *Oposiciones* y los autos electrónicos del Caso paralelo, hemos arribado a la conclusión de que el TPI actuó correctamente al desestimar las causas de acción dirigidas contra la Asociación de Residentes y los miembros de su Junta Directiva. Nos explicamos.

De entrada, y según hemos adelantado, el Caso paralelo fue presentado dos años antes que el pleito que nos ocupa y en el mismo no se ha emitido dictamen final alguno. Por medio de dicho pleito, la Asociación de Residentes reclama a los Apelantes el pago de $6,250.00, cantidad que alegan corresponde a cuotas de mantenimiento adeudadas, las cuales comprenden los gastos de operación, administración y sostenimiento del sistema de control de acceso que presuntamente sirve a la Urbanización Susan Court #1, en donde reside el matrimonio Román Rivera. **Esto es, en dicho caso, los Apelados le reclaman a los Apelantes cierta cantidad de dinero sobre el control de acceso que estos últimos alegan en el caso que nos ocupa que se implementó de manera ilegal y/o contrario a derecho**.

En otras palabras, al igual que en Caso Paralelo, los Apelantes plantean en el presente litigio que el control de acceso efectuado por la Asociación de Residentes es ilegal. Al analizar las alegaciones consignadas en la "**Demanda**" del caso de autos de la manera más beneficiosa al matrimonio Román Rivera, notamos que el fundamento principal en el que los Apelantes esgrimen sus causas de acción están basadas en la ilegalidad del control de acceso establecido. Asimismo, queda claro del legajo apelativo ante nos que, al amparo de la

implementación de dicho control de acceso, es que la Asociación de Residentes le reclama al matrimonio Román Rivera la alegada cuantía adeudada por concepto de los gastos de operación, administración y sostenimiento de dicho sistema.

Entonces, como se percibe, la procedencia de la referida obligación pecuniaria reclamada en el Caso Paralelo depende y está necesariamente vinculada a la determinación sobre la validez jurídica de la instalación y operación del sistema de control de acceso en controversia. Dicho de otro modo, para que el foro de instancia esté en posición de conceder el remedio solicitado por la Asociación de Residentes en dicho pleito, se hace necesario que adjudique la legalidad del mecanismo de acceso objeto de la presente controversia y que, en su día, pudiera generar las causas de acción de nulidad del reglamento y los daños reclamados en el caso de autos. Por consiguiente, cualquier determinación que se realice en dicho caso impactará directa e ineludiblemente las reclamaciones que los Apelantes presentaron en el caso de epígrafe.

En este contexto, permitir que ambas causas prosigan paralelamente sin tomar en consideración la relación que existe entre ellas podría generar determinaciones incongruentes o contradictorias. Tal escenario afectaría el principio de economía procesal y la uniformidad de las decisiones judiciales. En consecuencia, resolver en sentido contrario implicaría abrir la puerta a dictámenes que se contradigan entre sí, a pesar de que estén entrelazados y giren ineludiblemente sobre un asunto que trastoca o tiene efecto sobre el restante de las controversias que se ventilan en ambos casos.

Nótese que el Caso Paralelo está en las etapas finales del litigio y que la determinación final a la que arribe el foro de instancia en ese caso podría conllevar un efecto directo sobre las controversias en el caso que nos ocupa. Ante esta realidad fáctica y procesal, es palmario que la controversia planteada sobre la nulidad del reglamento adoptado como consecuencia del sistema de control de acceso y los presuntos daños provocados por las actuaciones de lo miembros de la Junta de Directores

de la Asociación de Residentes son prematuras actualmente y no pueden adjudicarse hasta tanto no exista una determinación final y firme sobre la legalidad o no del acceso controlado que pudiese figurar como un hecho probado para propósitos de dichas controversias.

Habiendo resuelto lo anterior, pasemos a discutir el último señalamiento de error. En resumidas cuentas, los Apelantes plantean que el TPI erró al imponer el pago de la cantidad de $6,500.00 por concepto de honorarios de abogado. Tras evaluar las circunstancias del presente caso, entendemos que la presentación de la "**Demanda**" de epígrafe no constituye la conducta temeraria que nuestro ordenamiento jurídico pretende sancionar. Por el contrario, a través de la misma, los Apelantes persiguen defenderse y/o buscar un remedio legal al que entienden tienen derecho, al plantear la presunta ilegalidad del sistema de control de acceso en contención. Del expediente ante nos, no se desprende la terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, que nuestro ordenamiento sanciona y que justifica la imposición de honorarios por temeridad. Por tanto, procede dejar sin efecto los mismos.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *modifica* la *Sentencia* apelada, a los efectos de dejar sin efecto la partida impuesta por concepto de honorarios de abogado por temeridad, y así modificada, se *confirma.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones